IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re:
: Chapter 11
:
: Case No. 23-10219 (KBO)
STARRY GROUP HOLDINGS, INC., *et al.*,[1] :
: (Jointly Administered)
Debtors.  :
: **Ref. Docket No. 175**
------------------------------------------------------------ x

**NOTICE OF FILING OF REVISED PROPOSED EXHIBITS TO THE DISCLOSURE STATEMENT FOR AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF STARRY GROUP HOLDINGS, INC. AND ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**PLEASE TAKE NOTICE** that, on March 20, 2023, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed the *Notice of Filing of Proposed Exhibits to the Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Starry Group Holdings, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 175].

**PLEASE TAKE FURTHER NOTICE** that on March 28, 2023, the Debtors filed the *Disclosure Statement for Amended Joint Chapter 11 Plan of Reorganization of Starry Group Holdings, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 239] (as may be amended from time to time, the "**Disclosure Statement**").

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit 1** are revised Financial Projections, which are Exhibit D to the Disclosure Statement.

---

[1] The debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are: Starry Group Holdings, Inc. (9355); Starry, Inc. (9616); Connect Everyone LLC (5896); Starry Installation Corp. (7000); Starry (MA), Inc. (2010); Starry Spectrum LLC (N/A); Testco LLC (5226); Starry Spectrum Holdings LLC (9444); Widmo Holdings LLC (9208); Vibrant Composites Inc. (8431); Starry Foreign Holdings Inc. (3025); and Starry PR Inc. (1214).  The debtors' address is 38 Chauncy Street, Suite 200, Boston, Massachusetts 02111.

30204436.2

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit 2** is the revised Liquidation Analysis, which is Exhibit E to the Disclosure Statement.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to present the Disclosure Statement for approval at the hearing currently scheduled for March 31, 2023 at 10:00 a.m. (ET).

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right to alter, amend, modify, or supplement any exhibit to the Disclosure Statement.

| | |
|---|---|
| Dated: March 28, 2023<br>Wilmington, Delaware | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>/s/ *Joseph M. Mulvihill*<br>Michael R. Nestor (No. 3526)<br>Kara Hammond Coyle (No. 4410)<br>Joseph M. Mulvihill (No. 6061)<br>Timothy R. Powell (No. 6894)<br>Rodney Square, 1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br>Email: mnestor@ycst.com<br>  kcoyle@ycst.com<br>  jmulvihill@ycst.com<br>  tpowell@ycst.com<br><br>-and-<br><br>**LATHAM & WATKINS LLP**<br><br>Jeffrey E. Bjork (admitted *pro hac vice*)<br>Ted A. Dillman (admitted *pro hac vice*)<br>Jeffrey T. Mispagel (admitted *pro hac vice*)<br>Nicholas J. Messana (admitted *pro hac vice*)<br>355 South Grand Avenue, Suite 100<br>Los Angeles, California 90071<br>Telephone: (213) 485-1234<br>Facsimile: (213) 891-8763<br>Email: jeff.bjork@lw.com<br>  ted.dillman@lw.com<br>  jeffrey.mispagel@lw.com<br>  nicholas.messana@lw.com<br><br>Jason B. Gott (admitted *pro hac vice*)<br>330 North Wabash Avenue, Suite 2800<br>Chicago, Illinois 60611<br>Telephone: (312) 876-7700<br>Facsimile: (312) 993-9767<br>Email: jason.gott@lw.com<br><br>*Counsel for Debtors and Debtors in Possession* |

## Exhibit 1

## Revised Financial Projections

**Financial Projection General Assumptions**

**Basis of Presentation (Non-GAAP)**

- The Financial Projections were prepared on a fully consolidated basis.
- Non-GAAP P&L excludes certain expenses including income tax expense, interest expense, depreciation and amortization, stock-based compensation, expenses related to restructuring, severance, and other non-recurring or one-time events.
- The capital structure assumed in the Financial Projections is based on the terms set forth in the Plan.

**Non-GAAP P&L**

- Total Revenue
  - The Company's revenues are primarily generated by sales of internet services. The timing of revenue recognition is based on the period that such services are consumed by the customer.
  - The majority of customers are individual users who may also receive subsidized internet services through federal subsidies, but a small amount are commercial arrangements where a building owner is the party with whom the Company contracts and who pays for all the units in a building or for the units utilizing the service.
  - The Company uses marketing incentives to solicit potential subscriber interest in its services, including the issuance of gift cards. Such promotional gift cards represent consideration paid to potential customers in anticipation of a contract and are recognized as a reduction to revenue.
- Operating Expenses
  - Operating expenses consist primarily of cost of goods sold as well as sales, marketing, and administration costs. The costs include salaries and benefits, sales commissions, marketing program spend, network infrastructure and equipment leases, vehicle leases, manufacturing and engineering equipment leases, software licenses and maintenance, subcontracting and temporary labor costs, facilities rent, utilities, and other facility-related operating costs including security, cleaning, maintenance, and property taxes.
- Adjusted EBITDA
  - Adjusted EBITDA is the Company's earnings before income tax expense, interest expense, depreciation and amortization, stock-based compensation, expenses related to restructuring, severance, and other non-recurring or one-time events. This measure is a way to evaluate the Company's ongoing profitability without considering financing decisions, accounting decisions, tax environments, or strategic initiatives. Adjusted EBITDA as presented is consistent with how the Company has historically presented its results.

**Non-GAAP Cash Flows**

- Interest Expense
  - Interest expenses for post-emergence period is based upon:
    - Of the total $101.3 million principal amount of the Exit Facility, the Debtors expect to have a total draw of $99.3 million over the projection, with $91.3 million expected to be drawn at the time of emergence and $8 million reserved as

- a delayed draw facility. The interest rate is 13% payable in kind ("PIK"). No cash interest is assumed over the forecast period.
- Cash Taxes
    - Illustrative based on tax guidance provided by the Company's advisors. Assumes Company has access to offset taxable income with NOLs built from pro forma operating losses post-Emergence, subject to the 80% utilization limit as defined in the 2018 Tax Cut and Jobs Act.
- Net Working Capital
    - Driven by ordinary course changes in accounts receivable, accounts payable, other current assets, and other current liabilities.
- Capital Expenditures
    - Primarily reflects purchases and capitalized labor related to new product development and success-based capital spend (capital spend related to new business), as well as software and hardware purchase to support internal resources / back-office functions.
- Net Changes in Debts
    - Represents delayed draw proceeds from the Exit Term Loan Facility and impact of PIK interest.

| 1. Non-GAAP Income Statement ($ US in millions) | 6 Months Ending 12/31/23 | 12 Months Ending 12/31/24 | 12/31/25 | 12/31/26 | 12/31/27 | 12/31/28 |
|---|---|---|---|---|---|---|
| **Revenue** | $ 24.1 | $ 56.6 | $ 68.0 | $ 82.2 | $ 90.9 | $ 93.7 |
| *YoY Growth %* | - | 24.7% | 20.2% | 20.8% | 10.7% | 3.0% |
| Operating Expenses | (31.9) | (59.3) | (61.0) | (62.1) | (62.3) | (63.0) |
| Depreciation and Amortization | (21.8) | (39.2) | (34.1) | (25.1) | (11.0) | (5.8) |
| **Operating Income** | $ (29.7) | $ (42.0) | $ (27.1) | $ (5.0) | $ 17.6 | $ 24.9 |
| Add: Depreciation and Amortization | 21.8 | 39.2 | 34.1 | 25.1 | 11.0 | 5.8 |
| **Adjusted EBITDA** | $ (7.9) | $ (2.7) | $ 7.0 | $ 20.1 | $ 28.6 | $ 30.7 |
| *Margin %* | -32.6% | -4.8% | 10.3% | 24.5% | 31.5% | 32.8% |

| 2. Non-GAAP Cash Flow Statement ($ US in millions) | 6 Months Ending 12/31/23 | 12 Months Ending 12/31/24 | 12/31/25 | 12/31/26 | 12/31/27 | 12/31/28 |
|---|---|---|---|---|---|---|
| Adjusted EBITDA | $ (7.9) | $ (2.7) | $ 7.0 | $ 20.1 | $ 28.6 | $ 30.7 |
| Cash Interest Expense | - | - | - | - | - | - |
| Cash Taxes | - | - | - | - | (0.0) | (0.1) |
| Net Working Capital | (1.2) | (0.4) | (0.8) | (0.9) | (1.2) | (0.9) |
| Other | - | - | - | - | - | - |
| **Cash from Operations** | $ (9.0) | $ (3.2) | $ 6.2 | $ 19.2 | $ 27.4 | $ 29.7 |
| Capital Expenditures | (2.9) | (5.5) | (8.0) | (8.1) | (6.1) | (5.9) |
| Net Change in Debt | 11.0 | 8.0 | - | - | - | - |
| **Net Cash Flow** | $ (0.9) | $ (0.6) | $ (1.9) | $ 11.1 | $ 21.3 | $ 23.8 |

**Exhibit 2**

**Revised Liquidation Analysis**

**LIQUIDATION ANALYSIS**

A. Introduction

The Debtors, together with their advisors, have prepared this hypothetical Liquidation Analysis in connection with the *Amended Joint Chapter 11 Plan of Reorganization of Starry Group Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 239] (as may be amended from time to time and including all exhibits and supplements thereto, the "Plan") and the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Starry Group Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (as may be amended from time to time and including all exhibits and supplements thereto, the "Disclosure Statement") for purposes of evaluating whether the Plan meets the often-called "best interests test" under Bankruptcy Code section 1129(a)(7). That section requires that a debtor's plan of reorganization provide each holder of a claim or interest who does not vote in favor of the plan with property of a value, as of the effective date of the plan, that is at least as much as the value the holder would receive in a hypothetical case under chapter 7 of the Bankruptcy Code ("Chapter 7"). All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

B. Limitations and Key Assumptions

**THE ILLUSTRATIVE LIQUIDATION ANALYSIS PRESENTED HEREIN HAS BEEN PREPARED SOLELY FOR THE PURPOSES AND USE OF THE DISCLOSURE STATEMENT AND DOES NOT REPRESENT OR CLAIM TO REPRESENT ANY ASSUMPTIONS OR COMPARISONS FOR ANY OTHER PURPOSE. NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION BY OR ADMISSION OF ANY DEBTOR FOR ANY PURPOSE.**

The Debtors prepared the illustrative Liquidation Analysis with the assistance of FTI Consulting, Inc. The Liquidation Analysis contains numerous estimates, including estimated Allowed Claims based upon a review of the Debtors' financial statements to account for estimated liabilities as necessary. The Liquidation Analysis includes estimates for Claims arising in the Chapter 11 Cases, which could be asserted and Allowed in a Chapter 7 liquidation, including unpaid Administrative Claims from the Chapter 11 Cases, and Chapter 7 Administrative Claims such as wind-down costs and Chapter 7 trustee fees. The Debtors' estimate of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims and Interests under the Plan. The cessation of business in a liquidation is likely to trigger certain claims that otherwise would not exist under a chapter 11 plan absent a liquidation, certain of which may not be included herein. Examples of these kinds of claims include various potential employee severance claims, unpaid Administrative Claims from the Chapter 11 Cases, and contract rejection claims. Some of these claims could be significant and may be entitled to priority in payment over General Unsecured Claims. The Liquidation Analysis does not include estimates for the tax consequences that may be triggered upon the liquidation and sale of assets in the manner described. Such tax consequences may be material. THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES OR IN THE EVENT THE CASES ARE CONVERTED TO CHAPTER 7 COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.

The determination of the hypothetical proceeds from the liquidation of assets is a highly uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtors' management team and their advisors, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtors and their management team. Accordingly,

there can be no guarantee that the values assumed in the Liquidation Analysis would be realized if the Debtors were actually liquidated.  In addition, any liquidation would take place in the future, at which time circumstances may exist that cannot presently be predicted.  The Liquidation Analysis should be read in conjunction with the Disclosure Statement and the Plan in their entirety, as well as the notes and assumptions set forth below.

The Debtors recognize that there are other potential alternatives that could occur in a hypothetical Chapter 7 liquidation not presented in the Liquidation Analysis, including alternatives that would give rise to reduced and delayed creditor recoveries.

**THE DEBTORS RESERVE THEIR RIGHT TO SUPPLEMENT, MODIFY, OR ADJUST ANY PART OF THE ILLUSTRATIVE LIQUIDATION ANALYSIS, INCLUDING TO CHANGE THE UNDERLYING ASSUMPTIONS AND ANALYSIS SET FORTH HEREIN.**

**C.    Basis of Presentation**

The Liquidation Analysis represents an estimated recovery for all creditors of the Debtors based upon a hypothetical liquidation of the Debtors, as if a Chapter 7 trustee ("Trustee") was appointed by the Bankruptcy Court presiding over the Debtors' Chapter 11 Cases to convert assets into cash for distribution to creditors.  The Liquidation Analysis does not contemplate a sale of the Debtors' business on a going concern basis.  Rather, the analysis assumes an orderly liquidation of substantially all the Debtors' assets and operations over a three-month period beginning July 1, 2023 (the "Conversion Date").  This timeline assumes that certain of the Debtors' facilities remain operational for a period of one to two months solely for the purpose of liquidating the fixed assets, which contain a primary source of value to creditors in this scenario.  All other assets, including spectrum licenses, are also assumed to be sold during this time (subject to necessary approvals).  The remaining operations of the business would be wound down within the 30 days following these asset sales.

The Liquidation Analysis assumes the Debtors' Chapter 11 Cases are converted to cases under Chapter 7 on the Conversion Date.  The Debtors assume a liquidation would be conducted pursuant to Chapter 7 of the Bankruptcy Code, with a Trustee appointed to manage the bankruptcy estate.  The Trustee would be responsible for liquidating the Debtors' assets in a manner intended to maximize the recovery to creditors.  Asset sale proceeds resulting from the liquidation process would be reduced by the expenses of the liquidation process prior to distributing such proceeds to any holders of Allowed Claims.  The three major components of the process are assumed to be as follows:

- Generation of cash proceeds from the sale of assets;
- costs and post-conversion operational cash flow related to the liquidation process, such as personnel retention costs, estate wind-down costs, severance costs, and Trustee and professional fees; and
- distribution of net proceeds generated from asset sales to claimants in accordance with the priority scheme under Chapter 7 of the Bankruptcy Code.

If litigation becomes necessary to resolve claims or issues asserted in the Chapter 7 cases by creditors or by the estates, distributions to creditors may be further delayed, which both decreases the present value of those distributions and increases administrative expenses that could diminish the liquidation proceeds available to creditors.  The effects of such administrative expenses and potential delay on the value of distributions under the Liquidation Analysis have not been considered in this analysis.

Except as otherwise noted herein, the Liquidation Analysis is based on the unaudited balance sheets of the Debtors as of December 31, 2022.  Several asset values were adjusted on a *pro forma* basis to the Conversion

Date.  For certain other assets, historical balance sheet amounts, unless otherwise noted herein, are intended to be a proxy for actual balances on the Conversion Date.

**D.  Notes to Liquidation Analysis**

  i.  **Dependence on Assumptions.**  The Liquidation Analysis is based on several estimates and assumptions that are inherently subject to significant economic, business, regulatory and competitive uncertainties and contingencies beyond the control of the Debtors.  Accordingly, there can be no assurance that the values reflected in the Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such liquidation, and actual results could vary materially and adversely from those contained herein.
  ii.  **Additional Claims in a Liquidation.**  The liquidation itself may trigger certain obligations and priority payments that otherwise would not be due in the ordinary course of business or would otherwise not exist under a chapter 11 plan.  These priority payments must be paid in full before any distribution of proceeds to Holders of General Unsecured Claims or Existing Equity Interests.  The liquidation would likely prompt certain other events to occur, including the prompt rejection of executory contracts and unexpired leases, defaults under agreements with vendors and customers, the exercise of set-off rights by certain creditors, and acceleration of severance obligations.  Such events, if triggered, would subject the Debtors' Chapter 7 estates to additional claims and/or reduce the assets available for distribution to creditors.  While these claims are estimated in this Liquidation Analysis, such amounts are highly uncertain and subject to material change.
  iii.  **Litigation Claims.**  The Liquidation Analysis does not attribute any value to potential litigation claims that may belong to the Debtors' estates, including any claims to recover potentially avoidable preferential and/or fraudulent transfers.  The Debtors believe that any value ascribed to such claims would be entirely speculative, given the inherent uncertainty and costs associated with litigating such claims and the unpredictable timeline to resolution of that litigation.
  iv.  **Chapter 7 Liquidation Costs.**  It is assumed that a period of three to four months would be required to complete the liquidation of the Debtors' estates.  The fees and operating expenses incurred during the Chapter 7 process are included in the estimate of Chapter 7 Administrative Claims and Trustee expenses.  In addition, there are liquidation costs associated with most of the Debtors' assets.  Costs of liquidation are displayed as a reduction to gross liquidation proceeds.
  v.  **Claim Estimates.**  Claims are estimated as of the Conversion Date based on management and its advisors' current projections.

**E.  Detailed Assumptions[1]**

[a] Cash & Cash Equivalents.  The Debtors estimate 100% realization on projected unrestricted Cash and cash equivalents as of the Conversion Date, based on the then-most recent Approved Budget pursuant to the Final DIP Order.  Cash and cash equivalents include any remaining proceeds of the Debtors' anticipated postpetition financing.  Projected cash balances are adjusted to remove certain forecasted payments that the Debtors do not anticipate making in such a scenario.

[b] Restricted Cash.  The Debtors estimate 21.5% realization on restricted cash as of the Conversion Date.  The assumed reductions to the full amount of restricted cash reflect the return of collateral related to the Debtors'

---

[1] Please refer to the exhibit with footnote references contained in the "Notes" column.

corporate credit card program and the set off of deposits associated with the Debtors' real property leases against the Debtors' liabilities under such leases.

[c] Accounts Receivable.  The Debtors estimate an overall 60% to 80% realization rate on accounts receivable, which reflects low expectation of customer counterclaims, due to short-term monthly contracts.

[d] Prepaid Expenses.  Prepaid expenses include a variety of prepayments, such as rent, equipment and software maintenance, insurance, and security deposits.  Prepayments were analyzed by type and recoveries vary based on a variety of factors, including potential counterclaims and, in the case of insurance, length of term remaining and associated cancellation provisions.  The Debtors estimate approximately 10% to 20% realization on the pro forma net book value as of June 30, 2023.

[e] Property & Equipment, Net.  Property, plant and equipment ("Property & Equipment") includes a variety of asset types, some of which are assumed not to have any realizable value.  Leased assets are assumed to have been immediately returned to the lessors or secured parties upon the Conversion Date.  The Debtors estimate approximately 11% to 19% realization on pro forma net book value as of the Conversion Date, which is based on realizing approximately 25% to 35% of the net book value of inventory, 8% to 15% of the net book value of telecom equipment and components, 40% to 60% of the net book value of vehicles, 5% to 10% of the net book value of office equipment, computer equipment, and furniture and fixtures, and no realization on leasehold improvements and other assets that would not be converted to cash.  Amounts shown are reduced by the estimated costs required to achieve recoveries, such as personnel and freight costs to decommission network equipment from each market, as well as costs to continue to keep facilities operational to allow for the Property & Equipment at those locations to be liquidated in an orderly manner.

[f] Intangible Assets.  Intangible assets consist of spectrum licenses acquired through FCC Auction 102 in June 2019, which provide the Company with the exclusive right to utilize certain radio frequency spectrum to provide wireless services.  It is assumed that these intangible assets have 40% to 60% recoverable value compared to the net book value carried on the Debtors' books and records.

[h] Wind-Down Costs.  Wind-Down costs include estimated personnel costs and fees of professionals to complete an administrative winding up of the Debtor entities.  Wind-own costs also are assumed to include the total possible Carve-Out (as defined in the Final DIP Order), which amount is equal to the aggregate of (i) all unpaid U.S. Trustee and court fees and (ii) all reasonable fees and expenses incurred by a Chapter 7 Trustee up to $50,000; (iii) the aggregate amount of unpaid fees of professionals retained in the Chapter 11 Cases, incurred on or prior to one business day after delivery of a carve-out trigger notice (subject to certain limitations as stated in the  Final DIP Order), and (iv) the aggregate amount of unpaid fees of professionals retained in the cases up to $750,000, plus (without duplication) any transaction-based fee (assumed to be $0) of any investment bankers or financial advisors incurred after the first business day after delivery of a carve-out trigger notice.

[i] Trustee Fees and Expenses.   The Liquidation Analysis assumes that the Chapter 7 Trustee would be compensated in accordance with the guidelines of section 326 of the Bankruptcy Code.

[g] DIP Facility Claims.  The Liquidation Analysis assumes that the Final DIP Order has been entered and that DIP Facility Claims are paid in accordance with the priorities set forth in the Final DIP Order.

[H] Pre-petition TL Claims.  The Liquidation Analysis assumes that Prepetition Term Loan Claims are paid in accordance with the priorities set forth in the Final DIP Order.

F.  Conclusion

Based on the assumptions outlined herein, the Debtors project they would realize **$53.7 to $73.9 million** in net liquidation proceeds from their assets in a Chapter 7 liquidation, representing approximately **28% to 38%** of aggregate net book value.  After Wind-down costs, recovery to holders of the DIP Facility Claims is estimated to range from **$48.8 to $68.4 million**, or **61% to 85%**.  Holders of Prepetition Term Loan Claims, Administrative Claims, Priority Tax Claims, Other Priority Claims, General Unsecured Claims, Subordinated Claims, or any Equity Interests are not expected to realize any recoveries in a Chapter 7 liquidation.

| Hypothetical Liquidation Analysis | | Estimated | Estimated Recovery $ | | Estimated Recovery % | |
| --- | --- | --- | --- | --- | --- | --- |
| *$ thousands* | Notes | Book Value | Low | High | Low | High |
| **Summary of Assets & Liquidation Proceeds** | | | | | | |
| Cash & Cash Equivalents | [a] | $ 20,357 | $ 20,357 | $ 20,357 | 100.0% | 100.0% |
| Restricted Cash | [b] | $ 930 | 200 | 200 | 21.5% | 21.5% |
| Accounts Receivable | [c] | $ 727 | 436 | 581 | 60.0% | 80.0% |
| Prepaid Expenses | [d] | $ 6,274 | 660 | 1,257 | 10.5% | 20.0% |
| Property & Equipment, Net | [e] | $ 118,046 | 12,675 | 22,461 | 10.7% | 19.0% |
| Intangible Assets | [f] | $ 48,463 | 19,385 | 29,078 | 40.0% | 60.0% |
| **Gross Liquidation Proceeds** | | **$ 194,796** | **53,712** | **73,934** | **27.6%** | **38.0%** |
| | | | | | | |
| **Creditor Recovery Waterfall / Use of Proceeds** | | | | | | |
| **I. Wind Down Costs** | | | | | | |
| Wind-Down Costs | [h] | n/a | (3,913) | (3,913) | | |
| Trustee Fees | [i] | n/a | (1,001) | (1,607) | | |
| **Total - Wind Down Costs** | | - | **(4,913)** | **(5,520)** | | |
| **Total Recoveries - After Wind-Down Costs** | | 194,796 | 48,799 | 68,414 | | |
| | | | | | | |
| **II. Claim Recoveries** | | | | | | |
| DIP TL | [g] | 80,300 | 48,799 | 68,414 | 60.8% | 85.2% |
| Pre-petition TL Claims | [h] | 256,016 | - | - | 0.0% | 0.0% |
| Administrative Claims | | 1,460 | - | - | 0.0% | 0.0% |
| Priority Tax Claims | | 8,746 | - | - | 0.0% | 0.0% |
| General Unsecured Claims | | 64,093 | - | - | 0.0% | 0.0% |
| Subordinated Claims | | - | - | - | 0.0% | 0.0% |
| Existing Equity Interests | | - | - | - | 0.0% | 0.0% |
| **Total Recoveries** | | **$ 410,615** | **48,799** | **68,414** | **11.9%** | **16.7%** |