## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------- x
                                                   :
In re:                                             :    Chapter 11
                                                   :
STARRY GROUP HOLDINGS, INC., et al.,¹              :    Case No. 23-10219 (KBO)
                                                   :
            Debtors.                               :    (Jointly Administered)
                                                   :
-------------------------------------------------- x
```

### NOTICE OF FILING OF PROPOSED ORDER CONFIRMING THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF STARRY GROUP HOLDINGS, INC. AND ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**PLEASE TAKE NOTICE** that, on May 22, 2023, the above-captioned debtors and debtors on possession (collectively, the "**Debtors**") filed the *Third Amended Joint Chapter 11 Plan of Reorganization of Starry Group Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [D.I. 459 (as modified, amended, or supplemented from time to time, the "**Plan**").

**PLEASE TAKE FURTHER NOTICE** that attached hereto as Exhibit A is a proposed form of order confirming the Plan (the "**Proposed Confirmation Order**").

**PLEASE TAKE FURTHER NOTICE** that the hearing (the "**Confirmation Hearing**") to consider confirmation of the Plan is scheduled for **May 24, 2023 at 1:00 p.m. (ET)** before the Honorable Karen B. Owens in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), located at 824 N. Market Street, 6th Floor, Courtroom No. 3, Wilmington, Delaware 19801. The Confirmation Hearing may be continued by the Debtors from time to time without further notice to parties in interest other than the announcement of the adjourned date(s) at the Confirmation Hearing or any continued hearing or on the applicable hearing, agenda or a notice filed with the Court.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right to amend, revise, modify or supplement the Proposed Confirmation Order prior to, at, or as a result of, the Confirmation Hearing.

*[Signature page follows]*

---

¹ The debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are: Starry Group Holdings, Inc. (9355); Starry, Inc. (9616); Connect Everyone LLC (5896); Starry Installation Corp. (7000); Starry (MA), Inc. (2010); Starry Spectrum LLC (N/A); Testco LLC (5226); Starry Spectrum Holdings LLC (9444); Widmo Holdings LLC (9208); Vibrant Composites Inc. (8431); Starry Foreign Holdings Inc. (3025); and Starry PR Inc. (1214). The debtors' address is 38 Chauncy Street, Suite 200, Boston, Massachusetts 02111.

Dated:  May 22, 2023
       Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/ *Joseph M. Mulvihill*
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Joseph M. Mulvihill (No. 6061)
Timothy R. Powell (No. 6894)
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  mnestor@ycst.com
       kcoyle@ycst.com
       jmulvihill@ycst.com
       tpowell@ycst.com

-and-

**LATHAM & WATKINS LLP**

Jeffrey E. Bjork (admitted *pro hac vice*)
Ted A. Dillman (admitted *pro hac vice*)
Jeffrey T. Mispagel (admitted *pro hac vice*)
Nicholas J. Messana (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
Email:  jeff.bjork@lw.com
       ted.dillman@lw.com
       jeffrey.mispagel@lw.com
       nicholas.messana@lw.com

Jason B. Gott (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
Email:  jason.gott@lw.com

*Counsel for Debtors and Debtors in Possession*

# **EXHIBIT A**

## **Proposed Confirmation Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------------- x
                                                            :
In re:                                                      :    Chapter 11
                                                            :
STARRY GROUP HOLDINGS, INC., et al.,[1]                     :    Case No. 23-10219 (KBO)
                                                            :
                        Debtors.                            :    (Jointly Administered)
                                                            :
----------------------------------------------------------- x
```

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
### CONFIRMING THIRD AMENDED JOINT CHAPTER 11 PLAN
### OF REORGANIZATION OF STARRY GROUP HOLDINGS, INC. AND ITS
### DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**WHEREAS,** the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), having:

a.    obtained, on March 14, 2023, entry of the *Order (I) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, (II) Establishing Assumption Procedures, and (III) Granting Related Relief* [Docket No. 127] (the "**Contract Procedures Order**"), which, among other things, approved Contract Noticing Procedures in connection with the assumption and assignment of Executory Contracts and Unexpired Leases (collectively, "**Contracts**") and the determination of amounts necessary to cure all monetary defaults thereunder ("**Cure Costs**");[2]

b.    filed, on March 31, 2023, the solicitation version of the *Amended Joint Chapter 11 Plan of Reorganization of Starry Group Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 272] (together with all exhibits and supplements thereto, the "**Solicited Plan**");

c.    filed, on March 31, 2023, the solicitation version of the *Disclosure Statement for Amended Joint Chapter 11 Plan of Reorganization of Starry Group Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No.

---

[1]    The debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are: Starry Group Holdings, Inc. (9355); Starry, Inc. (9616); Connect Everyone LLC (5896); Starry Installation Corp. (7000); Starry (MA), Inc. (2010); Starry Spectrum LLC (N/A); Testco LLC (5226); Starry Spectrum Holdings LLC (9444); Widmo Holdings LLC (9208); Vibrant Composites Inc. (8431); Starry Foreign Holdings Inc. (3025); and Starry PR Inc. (1214). The debtors' address is 38 Chauncy Street, Suite 200, Boston, Massachusetts 02111.

[2]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan (as defined below).

273] (as may be amended, supplemented, or modified from time to time, and together with all exhibits and supplements thereto, the "**Disclosure Statement**");

d.    obtained, on March 31, 2023, entry of the *Order (A) Approving the Amended Disclosure Statement; (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates; (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Amended Plan and for Filing Objections to the Amended Plan; (D) Approving the Manner and Forms of Notice and Other Related Documents; and (E) Granting Related Relief* [Docket No. 271] (the "**Disclosure Statement Order**"), which, among other things, (i) approved the Disclosure Statement as containing "adequate information" as defined in section 1125 of title 11 of the United States Code (the "**Bankruptcy Code**"), (ii) authorized the Debtors to solicit votes on the Solicited Plan, (iii) established procedures for soliciting and tabulating votes on the Solicited Plan; (iv) approved the form and manner of distribution of notices, Ballots, and other solicitation-related documents (collectively, the "**Solicitation Packages**") and the Debtors' voting procedures (the "**Voting Procedures**"); and (v) scheduled a hearing to consider confirmation of the Plan (the "**Confirmation Hearing**");

e.    caused, on April 5, 2023 and from time to time thereafter, the Solicitation Packages to be distributed in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Disclosure Statement Order, as evidenced by, among other things, the *Certificate of Service* [Docket No. 339] and *Supplemental Certificate of Service* [Docket Nos. 418, 430 & 431] (the "**Solicitation Affidavits**") filed by Kurtzman Carson Consultants LLC ("**KCC**"), the Debtors' Court-approved solicitation and tabulation agent;

f.    caused, on April 5, 2023, notice of the Confirmation Hearing (the "**Confirmation Hearing Notice**") to be published in the national edition of the *Wall Street Journal*, as evidenced by, among other things, the *Affidavit of Publication of the Notice of (A) Approval of Disclosure Statement, (B) Plan Confirmation Hearing and (C) Deadline to Vote on and Object to Confirmation of Plan in The Wall Street Journal* [Docket No. 364] (the "**Publication Affidavit**") filed by KCC;

g.    caused, on April 10, 2023 and at certain times thereafter, the *Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket No. 311] (as amended, modified, or supplemented, including pursuant to the *Notice of Supplemental Cure Schedule* [Docket No. 412] and *Notice of Second Supplemental Cure Schedule* [Docket No. 464], the "**Contract Notice**") to be distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Contract Procedures Order, as evidenced by, among other things, the *Certificate of Service* [Docket Nos. 365 & 404] (the "**Contract Affidavits**") filed by KCC;

h.    filed, on May 8, 2023, the *Notice of Filing of Plan Supplement* [Docket No. 408] (as amended, modified, or supplemented, including pursuant to the *Notice of Filing*

30396739.1

US-DOCS\141042994.12

*of Second Plan Supplement* [Docket No. 463] filed on May 22, 2023, the "**Plan Supplement**");

i.      filed, on May 22, 2023, the *Declaration of Darlene S. Calderon with Respect to the Tabulation of Votes on the Amended Joint Chapter 11 Plan of Reorganization of Starry Group Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 458] (the "**Voting Report**");

j.      filed, on May 22, 2023, the *Third Amended Joint Chapter 11 Plan of Reorganization of Starry Group Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 459] (together with all exhibits and supplements thereto, and as modified or amended from time to time, the "**Plan**");

k.      filed, on May 22, 2023, (i) the *Declaration of Chaitanya Kanojia in Support of Confirmation of Third Amended Joint Chapter 11 Plan of Reorganization of Starry Group Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 462], and (ii) the *Declaration of Heath C. Gray in Support of Confirmation of Third Amended Joint Chapter 11 Plan of Reorganization of Starry Group Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 461] (collectively, the "**Confirmation Declarations**"); and

l.      filed on May 22, 2023, the *Debtors (A) Memorandum of Law in Support of Confirmation of the Third Amended Joint Chapter 11 Plan of Reorganization of Starry Group Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code and (B) Omnibus Reply to Objections to Confirmation* [Docket No. [ ● ]] (the "**Confirmation Brief**").

**WHEREAS,** this Court having:

i.      set May 24, 2023, at 1:00 p.m. (prevailing Eastern Time) as the date and time for the commencement of the Confirmation Hearing pursuant to sections 1125, 1126, 1128, and 1129 of the Bankruptcy Code and Bankruptcy Rule 3018;

ii.      reviewed the Plan, the Disclosure Statement, the Confirmation Declarations, the Confirmation Brief, the Voting Report, and all other pleadings, exhibits, statements, responses, and comments regarding confirmation of the Plan ("**Confirmation**"), including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases (as defined below);

iii.      held the Confirmation Hearing and heard the statements, arguments, and objections made by counsel in respect of Confirmation;

iv.      considered all oral representations, documents, filings, and evidence regarding Confirmation;

v.      overruled all objections to Confirmation, as well as all statements, reservations of rights, and informal comments not consensually resolved or withdrawn, except as provided herein; and

vi.     taken judicial notice of certain papers and pleadings filed in the Chapter 11 Cases, certain evidence proffered or adduced, and certain arguments made at hearings before this Court during the pendency of the Chapter 11 Cases.

**NOW, THEREFORE,** this Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation was adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the record of the Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing including, but not limited to, the Voting Report and the Confirmation Declarations, each of which was admitted into evidence at the Confirmation Hearing, establish just cause for the relief granted in this Order (this "**<u>Confirmation Order</u>**"); and after due deliberation thereon and good cause appearing therefor, this Court hereby makes and issues the following findings of fact, conclusions of law, and order:

## I.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.    Findings and Conclusions

1.    The findings and conclusions set forth herein and on the record at the Confirmation Hearing constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    **Jurisdiction, Venue, Core Proceeding**

2.    This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409 and continues to be proper during the Chapter 11 Cases.  Confirmation is a core proceeding pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto.  This Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.  The Debtors are eligible debtors under section 109 of the Bankruptcy Code and are proper plan proponents under section 1121(a) of the Bankruptcy Code.

C.    **Commencement and Joint Administration of Chapter 11 Cases**

3.    On February 20, 2023 (the "**Petition Date**"), the Debtors filed voluntary petitions with this Court commencing cases under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The Debtors continue to manage and operate their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested or appointed in the Chapter 11 Cases.  The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) [Docket No. 52].

D.    **Committee**

4.    On March 3, 2023, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (as such committee may be reconstituted from time to time, the "**Committee**") in the Chapter 11 Cases pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 99].

### E.      Judicial Notice

5.      This Court takes judicial notice of (and deems admitted into evidence for purposes of Confirmation) the docket of the Chapter 11 Cases maintained by the Clerk of this Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before this Court during the Chapter 11 Cases.

### F.      Contract Procedures Order

6.      On March 14, 2023, this Court entered the Contract Procedures Order, which, among other things, approved Contract Noticing Procedures and set certain objection deadlines in connection with the assumption, assumption and assignment, and rejection of Contracts (collectively, the "**Contract Objection Deadlines**").

### G.      Disclosure Statement Order

7.      On March 31, 2023, this Court entered the Disclosure Statement Order, which, among other things, (a) approved the Disclosure Statement as containing "adequate information" as defined in section 1125 of the Bankruptcy Code and authorized the Debtors to solicit votes on the Plan, (b) approved the Voting Procedures, (c) approved the Solicitation Packages, (d) set May 15, 2023, at 5:00 p.m. (prevailing Eastern Time) as the deadline for voting to accept or reject the Plan      (the "**Voting Deadline**")      and      for      objecting      to      Confirmation (the "**Confirmation Objection Deadline**"), and (e) set May 24, 2023 at 1:00 p.m. (prevailing Eastern Time) as the date and time for the Confirmation Hearing.

### H.      Plan Supplement

8.      On May 8, 2023 and May 22, 2023, the Debtors filed the Plan Supplement.  The Plan Supplement complies and is consistent with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents was good and proper and in accordance with the

Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and the facts and circumstances of the Chapter 11 Cases. No other or further notice is or will be required with respect to the Plan Supplement. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. All Holders of Claims who voted to accept the Plan and who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as supplemented by the Plan Supplement. Subject to the terms of the Plan, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date subject to compliance with the Bankruptcy Code and the Bankruptcy Rules; *provided*, that no such alteration, amendment, update, or modification shall be inconsistent with the terms of this Confirmation Order or the Plan.

      **I.**        **Transmittal and Mailing of Materials; Notice**

      9.      As evidenced by the Solicitation Affidavits, the Publication Affidavit, the Contract Affidavits, and the Voting Report, as applicable, due, adequate, and sufficient notice of entry of the Contract Procedures Order, the Disclosure Statement Order, the Plan, and Contracts to be assumed and assigned by the Debtors (such Contracts, "**Assumed Contracts**") and related Cure Costs and the procedures for objecting thereto and resolution of disputes by this Court thereof has been given to all parties required by, and in substantial compliance with, the Contract Procedures Order, the Disclosure Statement Order, and Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), and no other or further notice is or shall be required. Due, adequate, and sufficient notice of the Contract Objection Deadlines, the Voting Deadline, the Confirmation Objection Deadline, the Confirmation Hearing, and any other applicable dates and hearings described in the Contract Procedures Order and the Disclosure Statement Order was given in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Contract Procedures Order, and the Disclosure Statement Order, and no other or further notice is or shall be required.

30396739.1

US-DOCS\141042994.12

**J.    Solicitation**

10.    The Debtors solicited votes for acceptance and rejection of the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to sections 1125, 1126, and all other applicable sections of the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, the Disclosure Statement Order, and all other applicable rules, laws, and regulations.  All procedures used to distribute Ballots to the applicable Holders of Claims and to tabulate the Ballots were fair and reasonable and conducted in good faith and in accordance with the Disclosure Statement Order and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and all other applicable rules, laws, and regulations.  Each Released Party and Exculpated Party acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all conduct relating to the solicitation of acceptances of the Plan and the other activities described in section 1125 of the Bankruptcy Code.  Accordingly, the Released Parties and Exculpated Parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**K.    Voting Report**

11.    On May 22, 2023, the Debtors filed the Voting Report.  As set forth in the Voting Report, the procedures used to tabulate the Ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations.

12.    As set forth in the Plan, Holders of Claims in Class 3 (Prepetition Term Loan Claims) and Class 4 (General Unsecured Claims) (together, the "**Voting Classes**") were eligible to vote on the Plan.  Holders of Claims in Class 1 (Other Priority Claims) and Class 2 (Other

8

Secured Claims) are Unimpaired and conclusively presumed to have accepted the Plan and, therefore, were not entitled to vote to accept or reject the Plan. Holders of Claims and Interests in Class 5 (Intercompany Claims) and Class 7 (Intercompany Interests) either are Unimpaired, in which case they are conclusively deemed to have accepted the Plan, or Impaired, in which case they are conclusively deemed to have rejected the Plan, and therefore, were not entitled to vote to accept or reject the Plan. Holders of Claims and Interests in Class 6 (Subordinated Claims) and Class 8 (Equity Interests) (together with Holders of Claims and Interests in Class 5 (Intercompany Claims) and Class 7 (Intercompany Interests), to the extent Impaired under the Plan, the "**Deemed Rejecting Classes**") are Impaired under the Plan, are entitled to no recovery under the Plan, and are therefore conclusively deemed to have rejected the Plan. The Plan consolidates Claims against all Debtors solely for purposes of voting, Confirmation, and distribution, but not for any other purpose.

13.    As evidenced by the Voting Report, each of the Voting Classes voted to accept the Plan.

**L.    Modifications to Plan**

14.    The modifications made to the Plan after solicitation (collectively, the "**Modifications**"), as reflected in the Plan, constitute technical or clarifying changes or otherwise do not materially or adversely affect or change the treatment of any Claims against, or Interests in, the Debtors, and notice of the Modifications was adequate and appropriate under the facts and circumstances of the Chapter 11 Cases. In particular, the Modifications pertaining to the recovery of Class 4 General Unsecured Claims do not adversely affect the treatment of such Claims relative to the Solicited Plan. Accordingly, pursuant to Bankruptcy Rule 3019, (a) no other or further disclosure with respect to the Modifications is required under section 1125 of the Bankruptcy Code, (b) neither resoliciting votes on the Plan nor affording holders of Claims in the

30396739.1

US-DOCS\141042994.12

Voting Classes the opportunity to change a previously cast Ballot is required under section 1126 of the Bankruptcy Code, and (c) the Plan shall be deemed accepted by all holders who voted to accept (or were deemed to accept) the Solicited Plan.

### M.    Bankruptcy Rule 3016

15.    The Plan is dated and identifies the Debtors as the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed the Disclosure Statement and the Plan with this Court, thereby satisfying Bankruptcy Rule 3016(b).

### N.    Burden of Proof

16.    The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for Confirmation.  Further, each witness who testified on behalf of the Debtors at or in connection with the Confirmation Hearing was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

### O.    Compliance with Section 1129 of Bankruptcy Code

1.    <u>Plan's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>

17.    The Plan complies with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(l) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code.

a.    *Plan Classification Structure (11 U.S.C. § 1122)*

18.    <u>Article III</u> of the Plan designates Classes of Claims and Interests, other than Administrative Claims, DIP Facility Claims, and Priority Tax Claims, which need not be classified. The Plan contains the following 8 Classes of Claims and Interests:  (a) Class 1 (Other Priority Claims); (b) Class 2 (Other Secured Claims); (c) Class 3 (Prepetition Term Loan Claims); (d) Class 4 (General Unsecured Claims); (e) Class 5 (Intercompany Claims); (f) Class 6 (Subordinated

30396739.1
US-DOCS\141042994.12

Claims); (g) Class 7 (Intercompany Interests); and (h) Class 8 (Equity Interests). Each Class contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class, and valid business, factual, and legal reasons exist for the separate classification of each Class. Accordingly, section 1122 of the Bankruptcy Code has been satisfied.

b.    *Proper Classification (11 U.S.C. § 1123(a)(1))*

19.    As set forth above, <u>Article III</u> of the Plan properly designates Classes of Claims and Interests, thereby satisfying section 1123(a)(1) of the Bankruptcy Code.

c.    *Specified Unimpaired Claims and Interests (11 U.S.C. § 1123(a)(2))*

20.    <u>Article III.B</u> of the Plan specifies that (a) Class 1 (Other Priority Claims) and Class 2 (Other Secured Claims) are Unimpaired under the Plan and (b) Class 5 (Intercompany Claims) and Class 7 (Intercompany Interests) are either Unimpaired or Impaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

d.    *Specified Treatment of Impaired Claims and Interests (11 U.S.C. § 1123(a)(3))*

21.    <u>Article III.B</u> of the Plan specifies the treatment of Impaired Claims in Class 3 (Prepetition Term Loan Claims), Class 4 (General Unsecured Claims), Class 5 (Intercompany Claims), Class 6 (Subordinated Claims), Class 7 (Intercompany Interests), and Class 8 (Equity Interests), thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

e.    *Equal Treatment (11 U.S.C. § 1123(a)(4))*

22.    <u>Article III.B</u> of the Plan provides for the same treatment for each Claim or Interest within a particular Class, unless the holder of a Claim or Interest agrees to a less favorable treatment of its Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

30396739.1

US-DOCS\141042994.12

f.      *Adequate Means for Implementation of Plan (11 U.S.C. § 1123(a)(5))*

23.     <u>Article IV</u> and various other provisions of the Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan, including:  (a) the establishment of a Professional Fee Escrow Account to secure the payment of certain Professional Fee Claims; (b) the good-faith compromise and settlement of Claims, Interests, Causes of Action, and controversies relating thereto; (c) the effectuation of the transactions included as part of the Restructuring; (d) the vesting of certain of the Debtors' property in the Reorganized Debtors; (e) the cancellation of certain financial instruments and Interests; (f) by specifying sources of consideration for distributions under the Plan; (g) the approval of the terms of the Exit Facility and associated agreements; (h) the acquisition of the Reorganized Starry Holdings Equity by New Starry; (i) by addressing tax treatment and reporting in connection with the transactions contemplated by the Plan; (j) the appointment of the New Board and deemed resignation of the Debtors' directors as of the Effective Date; (k) by providing authority to the Reorganized Debtors to pursue, settle, or abandon retained Causes of Action; (l) by providing authority to undertake corporate actions necessary to effectuate the Plan; and (m) the rejection or assumption of Contracts.  Accordingly, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

g.      *Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))*

24.     To the extent applicable, the New Organizational Documents set forth in the Plan Supplement prohibit the issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

> h.    *Designation of Directors and Officers 11 U.S.C. § 1123(a)(7))*

25.    <u>Article IV.P</u> of the Plan and the Plan Supplement identify the members of the New Board and the Reorganized Debtors' management, and the selection of such individuals is consistent with the interests of Holders of Claims and Interests and with public policy. Accordingly, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

> i.    *Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1))*

26.    As set forth above, <u>Article III</u> of the Plan renders Impaired, or leaves Unimpaired, as the case may be, each Class of Claims and Interests, in compliance with section 1123(b)(1) of the Bankruptcy Code.

> j.    *Assumption, Assignment, and Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))*

27.    <u>Article V</u> of the Plan provides that, on the Effective Date, any Contract (a) not previously assumed, or (b) not previously rejected pursuant to an order of this Court, subject to the reasonable consent of the Required Consenting Lenders after consulting with Birch Grove, shall be deemed assumed as of the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code, except any Contract (x) identified on the Rejected Contracts List filed as part of the Plan Supplement, (y) that is the subject of a separate motion or notice to reject pending as of the Effective Date, or (z) that previously expired or terminated pursuant to its own terms (disregarding any terms the effect of which is invalidated by the Bankruptcy Code).

28.    As reflected in the Contract Affidavits, the Debtors have provided notice to each non-Debtor counterparty to each Contract of the treatment of such non-Debtor counterparty's Contract pursuant to the Plan, as well as the applicable Cure Cost.  In assuming or rejecting the Contracts, the Debtors (a) utilized their sound business judgment, (b) complied with section 365 of the Bankruptcy Code, as contemplated by section 1123(b)(2) of the Bankruptcy Code, and (c) in

the case of the Assumed Contracts, provided adequate assurance of future performance (within the meaning of section 365 of the Bankruptcy Code), and no further adequate assurance is or shall be required. Accordingly, the Plan complies with section 1123(b)(2) of the Bankruptcy Code.

k.   *Settlement of Claims; Retention and Enforcement of Causes of Action (11 U.S.C. § 1123(b)(3))*

29.   <u>Compromise and Settlement</u>.  Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for (a) the distributions, releases, and other benefits provided under the Plan, and (b) the support of the DIP Agent, Prepetition Agent, DIP Lenders, Prepetition Lenders (collectively, the "**Lenders**"), and the Debtors' board of directors and management in connection with the Restructuring Support Agreement and the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies relating to any Allowed Claim or Interest or any distribution to be made on account thereof or otherwise resolved under the Plan. Such compromise and settlement is fair, equitable, and reasonable and in the best interests of the Debtors and the Estates.

30.   In accordance with the provisions of the Plan, including, without limitation, <u>Article IV.R</u> of the Plan, on and after the Effective Date, and to the extent not released pursuant to <u>Article IV.R</u> or any other provision of the Plan, the Reorganized Debtors shall retain and may enforce, sue on, settle, compromise, otherwise resolve, discontinue, abandon, or dismiss all retained Causes of Actions, without any further notice to or action, order, or approval of this Court, *provided, however*, that on the Effective Date, notwithstanding any other provision in the Plan or any order entered in the Chapter 11 Cases, the Debtors and the Reorganized Debtors shall forever waive, relinquish, and release any and all Causes of Action the Debtors and the Estates had, have, or may have against any Released Party to the fullest extent set forth in <u>Article IX.B</u> of the Plan.

30396739.1

US-DOCS\141042994.12

31.   <u>Subordinated Claims</u>.  The classification and manner of satisfying all Claims and Interests under the Plan takes into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.  All subordination rights that a Holder of a Claim or Interest may have with respect to any distribution to be made under the Plan, shall be discharged and terminated, and all actions related to the enforcement of such subordination rights shall be enjoined permanently. Accordingly, distributions under the Plan to Holders of Allowed Claims shall not be subject to payment of a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment, or other legal process by a beneficiary of such terminated subordination rights.

32.   <u>Debtor Release</u>.  The releases set forth in <u>Article IX.B</u> of the Plan (collectively, the "**<u>Debtor Release</u>**") constitute an essential and critical provision of the Plan and formed an integral part of the agreement among all parties in interest embodied in the Plan, as demonstrated by, among other things, the terms of the Restructuring Support Agreement.  The Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, is:  (a) within the jurisdiction of this Court pursuant to 28 U.S.C. § 1334; (b) given in exchange for good and valuable consideration provided by or on behalf of the Released Parties; (c) the product of good-faith, arm's-length negotiations among the Debtors and their constituents; (d) a good-faith settlement and compromise of the Claims released by the Debtor Release; (e) in the best interests of the Debtors, the Estates, and the Debtors' creditors; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; (h) appropriately narrow in scope, given that it expressly excludes any Causes of Action arising from acts of actual fraud, gross negligence, or willful misconduct; and (i) a bar to assertion of any Claim or Cause of

30396739.1

US-DOCS\141042994.12

Action released pursuant to the Debtor Release by any of the Debtors or the Estates, or by any party seeking to do so on behalf of or through the Debtors or the Estates.

33.    The Debtor Release appropriately offers protection to parties that directly or constructively participated in the Debtors' restructuring efforts.  Such protections from liability facilitated the participation of many of the Debtors' stakeholders in the negotiations and compromises that led to the Plan.  In addition, following the conclusion of an investigation conducted by the board of directors of Starry Holdings, the Debtors are not aware of any (a) significant potential claims that are being released or (b) pending litigation that would be discontinued as a result of the Debtor Release.

34.    The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases.  In light of, among other things, the value provided by or on behalf of the Released Parties to the Estates and the critical nature of the Debtor Release to the Plan, the Debtor Release is approved.

35.    <u>Third-Party Release</u>.  The releases set forth in <u>Article IX.C</u> of the Plan (collectively, the "**<u>Third-Party Release</u>**") constitute an essential and critical provision of the Plan and formed an integral part of the agreement among all parties in interest embodied in the Plan, as demonstrated by, among other things, the terms of the Restructuring Support Agreement.  The Third-Party Release is:  (a) fully consensual on the part of the Non-Debtor Releasing Parties, as all Holders of Claims included in the definition of Non-Debtor Releasing Party were given an opportunity to opt out of the Third-Party Release (or otherwise affirmatively agreed to be bound thereby); (b) within the jurisdiction of this Court pursuant to 28 U.S.C. § 1334; (c) given in exchange for good and valuable consideration provided by or on behalf of the Released Parties; (d) a good-faith settlement and compromise of the Claims released by the Third-Party Release;

(e) in the best interests of the Debtors, the Estates, and the Debtors' creditors; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; (h) appropriately narrow in scope, given that it expressly excludes any Causes of Action arising from acts of actual fraud, willful misconduct, or gross negligence; and (i) a bar to any of the Non-Debtor Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

36.     Like the Debtor Release, the Third-Party Release and its protections were necessary inducements to the participation of many of the Debtors' stakeholders in the negotiations and compromises that led to the Plan and the structure for the Debtors' reorganization. Specifically, the Released Parties, individually and collectively, made significant contributions to the Chapter 11 Cases, including entering into the Restructuring Support Agreement, providing funding for the Chapter 11 Cases, permitting use of their collateral during the Chapter 11 Cases, and otherwise actively supporting the Debtors' reorganization. The Third-Party Release therefore appropriately offers protection to parties who actively and constructively participated in and contributed to the Plan and without whom Confirmation could not have been achieved. In addition, following the conclusion of an investigation conducted by the board of directors of Starry Holdings, the Debtors are not aware of any (a) significant potential claims that are being released or (b) pending litigation that would be discontinued as a result of the Third-Party Release.

37.     The scope of the Third-Party Release in the Plan is appropriately tailored to the facts and circumstances of the Chapter 11 Cases, and parties received due and adequate notice of the Third-Party Release and, to the extent provided under the Plan, the opportunity to opt out of or object to the Third-Party Release, as applicable. In light of, among other things, the value provided by or on behalf of the Released Parties to the Estates, the consensual nature of the Third-Party

Release, and the critical nature of the Third-Party Release to the Plan, the Third-Party Release is approved.

38.    _Exculpation_.    The exculpation provisions set forth in Article IX.D of the Plan (collectively, the "**_Exculpation_**") are approved.   The Exculpation is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, is a key element of the Restructuring Support Agreement and the Plan, and is appropriately limited in scope, as it will have no effect on the liability of any Person or Entity that results from any such act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.   The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the securities pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

39.    _Injunction_.    The injunctive provisions set forth in Article IX.E of the Plan (collectively, the "**_Injunction_**") are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third-Party Release, and the Exculpation in Article IX of the Plan.   Such Injunction is appropriately tailored to achieve those purposes. Accordingly, the Injunction is approved.

40.    _Retained Causes of Action_.    The provisions regarding the retention of Causes of Action in the Plan, including Article IV.R of the Plan, are appropriate and are in the best interests of the Debtors, the Estates, and the Debtors' creditors.   The exhibit identifying retained Causes of

Actions filed as part of the Plan Supplement adequately specifies retained Causes of Actions under the Plan.

41.     In light of the foregoing, the Plan complies with section 1123(b)(3) of the Bankruptcy Code.

> l.      *Sale of Property (11 U.S.C. § 1123(b)(4))*

42.     Because the Debtors are consummating the Restructuring, section 1123(b)(4) of the Bankruptcy Code is inapplicable to the Plan.

> m.      *Modification of Rights of Holders of Claims (11 U.S.C. § 1123(b)(5))*

43.     Article III of the Plan modifies or leaves unaffected, as the case may be, the rights of Holders of each Class of Claims, and therefore, the Plan is consistent with section 1123(b)(5) of the Bankruptcy Code.

> n.      *Other Provisions Not Inconsistent with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1123(b)(6))*

44.     The Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code, including:    (a) the provisions of Article IV regarding the means for executing and implementing the Plan; (b) the provisions of Article V governing the treatment of Contracts; (c) the provisions of Article VI governing distributions on account of Allowed Claims, particularly as to the timing and calculation of amounts to be distributed; (d) the provisions of Articles IX.B, IX.C, and IX.D regarding the Debtor Release, Third-Party Release, and Exculpation; (e) the provisions of Article IX.E regarding the Injunction; and (f) the provisions of Article X regarding retention of jurisdiction by this Court over certain matters after the Effective Date.  The Plan is therefore consistent with section 1123(b)(6) of the Bankruptcy Code.

2.      Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))

45.     The Debtors have complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018.  The Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.  The Disclosure Statement and the procedures by which the Ballots for acceptance or rejection of the Plan were solicited and tabulated were fair, properly conducted, and in accordance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and the Disclosure Statement Order.  The Debtors and their respective members, officers, directors, managers, shareholders, employees, representatives, advisors, attorneys, financial advisors, investment bankers, or agents, as applicable, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code.  The Plan therefore complies with section 1129(a)(2) of the Bankruptcy Code.

3.      Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))

46.     The Debtors proposed the Plan (including the Plan Supplement and all related documents) in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, this Court has examined the totality of the circumstances surrounding the formulation of the Plan.  The good faith of each of the Debtors, the Lenders, and the Debtors' other constituencies is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, and the record of the Confirmation Hearing.  Based on the evidence presented at the Confirmation Hearing, this Court finds and concludes that the Plan has been proposed with the legitimate and honest purpose of maximizing the value of the Estates for the benefit of all holders of Claims and Interests.  Moreover, the Plan itself and the arm's-length negotiations among the Debtors, the Lenders, and the Debtors' other constituencies leading to the

30396739.1

US-DOCS\141042994.12

Plan's formulation, as well as the overwhelming support of creditors for the Plan, provide independent evidence of the Debtors' good faith in proposing the Plan. Further, the Plan's classification, indemnification, settlement, discharge, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the transactions contemplated by the Plan. Consistent with the overriding purpose of the Bankruptcy Code, the Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate and honest purpose of reorganizing the Debtors and maximizing the value of the Debtors' assets. Accordingly, section 1129(a)(3) of the Bankruptcy Code has been satisfied.

    4.    <u>Court Approval of Fee Claims (11 U.S.C. § 1129(a)(4))</u>

47.    <u>Article II.A.2</u> of the Plan provides that any payment made or to be made by the Debtors for services or for costs and expenses of professionals in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, this Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

    5.    <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>

48.    Information concerning the identity and affiliations of the Persons proposed to serve as the initial directors and officers of the Reorganized Debtors has been disclosed in the Plan Supplement, and the selection of such Persons is consistent with the interests of creditors, equity holders, and public policy. To the extent known by the Debtors, the proposed compensation payable to any insiders to be employed or retained by the Reorganized Debtors has been disclosed in the Plan Supplement. Accordingly, section 1129(a)(5) of the Bankruptcy Code has been satisfied.

6.      No Rate Changes (11 U.S.C. § 1129(a)(6))

49.     The Plan does not provide for any rate changes by any of the Reorganized Debtors, and thus section 1129(a)(6) of the Bankruptcy Code is inapplicable.

7.      Best Interest of Creditors (11 U.S.C. § 1129(a)(7))

50.     The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing, including the Confirmation Declarations (as applicable), the Voting Report, the liquidation analysis attached to the Disclosure Statement as Exhibit E, and the facts and circumstances of the Chapter 11 Cases:  (a)  is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; and (d) establishes that Holders of Allowed Claims or Interests in each impaired Class (1) has accepted the Plan or (2) will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such Holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.  Accordingly, section 1129(a)(7) of the Bankruptcy Code has been satisfied.

8.      Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).

51.     Certain Classes of Claims are Unimpaired and are deemed conclusively to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  In addition, at least one Impaired Class entitled to vote has voted to accept the Plan (without considering acceptances of the Plan by any "insider" as defined in the Bankruptcy Code).  Because the Plan provides that certain Classes of Claims and Interests are Impaired and no distributions shall be made to Holders in such Classes, such Holders are deemed conclusively to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

Accordingly, section 1129(a)(8) is not satisfied; *however*, as set forth below, the Plan is nevertheless confirmable because it satisfies the requirements of section 1129(b).

> 9.      Treatment of Administrative Claims, DIP Facility Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9))

52.      Article II of the Plan provides for treatment of Administrative Claims, DIP Facility Claims, Priority Tax Claims, and Other Priority Claims, subject to certain bar date provisions consistent with Bankruptcy Rules 3002 and 3003, in the manner required by section 1129(a)(9) of the Bankruptcy Code.

> 10.      Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))

53.      As indicated in the Voting Report and reflected in the record of the Confirmation Hearing, Class 3 (Prepetition Term Loan Claims) and Class 4 (General Unsecured Claims) are Impaired and have voted to accept the Plan (without considering acceptances of the Plan by any "insider" as defined in the Bankruptcy Code).  Accordingly, section 1129(a)(10) of the Bankruptcy Code has been satisfied.

> 11.      Feasibility (11 U.S.C. § 1129(a)(11))

54.      The information in the Disclosure Statement (a) is persuasive and credible, (b) has not been controverted by other evidence, and (c) together with the record of the Chapter 11 Cases and the evidence presented at the Confirmation Hearing, including the Confirmation Declarations (as applicable) establishes that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan with respect to operating their business in the ordinary course, and that Confirmation is not likely to be followed by liquidation or the need for further financial reorganization of the Debtors or Reorganized Debtors.  Accordingly, section 1129(a)(11) of the Bankruptcy Code has been satisfied.

12.   Payment of Statutory Fees (11 U.S.C. § 1129(a)(12))

55.   Article II.D of the Plan provides for the payment of all fees due and payable pursuant to 28 U.S.C. § 1930 by the Debtors before or as of the Effective Date, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

13.   Benefit Plans (11 U.S.C. § 1129(a)(13))

56.   Article V.F of the Plan provides that, subject to the provisions of the Plan, all Compensation and Benefits Programs—which are defined to include retirement benefits, if any—will be treated as Executory Contracts under the Plan and, with the consent of the DIP Agent and Prepetition Agent, will be deemed assumed on the Effective Date pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code.  Therefore, to the extent the Debtors provided retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code) before the Effective Date, such benefits will be maintained, thereby satisfying section 1129(a)(13) of the Bankruptcy Code.

14.   Inapplicable Provisions (11 U.S.C. § 1129(a)(14)-(16))

57.   The Debtors are not (a) required to pay any domestic support obligations, (b) individuals, or (c) nonprofit corporations or trusts, and sections 1129(a)(14)-(16) of the Bankruptcy Code are therefore inapplicable.

15.   Nonconsensual Confirmation (11 U.S.C. § 1129(b))

58.   Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed despite the fact that certain Classes of Claims and Interests have not accepted the Plan because the Plan meets the "cramdown" requirements for confirmation under section 1129(b) of the Bankruptcy Code.  Other than the requirement in section 1129(a)(8) of the Bankruptcy Code with respect to such rejecting Classes, all of the applicable requirements of section 1129(a) of the Bankruptcy Code have been met.

30396739.1

US-DOCS\141042994.12

59.    The Holders of Claims in Class 5 (Intercompany Claims) may be deemed to have rejected the Plan.  The Plan provides that no holder of any Claim or Interest that is junior to such Claims will receive or retain any property on account of their Claim or Interest, and no holder of any Claim or Interest that is senior to such Claims is receiving more than full payment on account of their Claim or Interest.  The Plan therefore is fair and equitable, does not discriminate unfairly with respect to Class 5 (Intercompany Claims), and complies with section 1129(b)(2)(B) of the Bankruptcy Code.

60.    The Holders of Claims in Class 6 (Subordinated Claims) are deemed to have rejected the Plan.  The Plan provides that no holder of any Claim or Interest that is junior to such Claims will receive or retain any property on account of their Claim or Interest, and no holder of any Claim or Interest that is senior to such Claims is receiving more than full payment on account of their Claim or Interest.  The Plan therefore is fair and equitable, does not discriminate unfairly with respect to Class 6 (Subordinated Claims), and complies with section 1129(b)(2)(B) of the Bankruptcy Code.

61.    The Holders of Interests in Class 7 (Intercompany Interests) may be deemed to have rejected the Plan.  The Plan provides that no holder of any Claim or Interest that is junior to such Interests will receive or retain any property on account of their Claim or Interest, and no holder of any Claim or Interest that is senior to such Interests is receiving more than full payment on account of their Claim or Interest.  The Plan therefore is fair and equitable, does not discriminate unfairly with respect to Class 7 (Intercompany Interests), and complies with section 1129(b)(2)(C) of the Bankruptcy Code.

62.    The Holders of Interests in Class 8 (Equity Interests) are deemed to have rejected the Plan.  The Plan provides that no holder of any Claim or Interest that is junior to such Interests

will receive or retain any property on account of their Claim or Interest, and no holder of any Claim or Interest that is senior to such Interests is receiving more than full payment on account of their Claim or Interest.  The Plan therefore is fair and equitable, does not discriminate unfairly with respect to Class 8 (Equity Interests), and complies with section 1129(b)(2)(C) of the Bankruptcy Code.

63.     The Plan therefore is fair and equitable, does not discriminate unfairly with respect to any of these Classes, and complies with section 1129(b) of the Bankruptcy Code.

16.     <u>Only One Plan (11 U.S.C. § 1129(c))</u>

64.     The Plan (including previous versions thereof) is the only chapter 11 plan proposed in the Chapter 11 Cases, in compliance with section 1129(c) of the Bankruptcy Code.

17.     <u>Purpose of Plan (11 U.S.C. § 1129(d))</u>

65.     The primary purpose of the Plan is not the avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, and there has been no objection filed by any governmental unit asserting such avoidance.  Thus, the Plan complies with section 1129(d) of the Bankruptcy Code.

18.     <u>Satisfaction of Section 1129 of Bankruptcy Code</u>

66.     Based on the foregoing, the Plan satisfies the applicable requirements of section 1129 of the Bankruptcy Code.

**P.     Good-Faith Participation**

67.     Based upon the record before this Court, the Released Parties and the Exculpated Parties, in connection with all their respective activities relating to the Chapter 11 Cases (including the active negotiation, compromises, and pursuit of confirmation of the Plan), have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the provisions of the Bankruptcy Code and Bankruptcy Rules.  Therefore, they are entitled to the

30396739.1

US-DOCS\141042994.12

protections afforded by section 1125(e) of the Bankruptcy Code and by the release, exculpatory, and injunctive provisions set forth in Article X of the Plan, in each case, as applicable.

**Q.    Agreements and Other Documents**

68.    The Debtors have disclosed all material facts, to the extent applicable, regarding: (a) the agreements with respect to the Exit Facility, including the Exit Facility Equity, (b) the New Organizational Documents, and (c) the adoption, execution, and delivery of all contracts, instruments, releases, and other agreements related to any of the foregoing or otherwise related to the Plan.

**R.    Likelihood of Satisfaction of Conditions Precedent to Effective Date**

69.    Without limiting or modifying the rights of the Debtors and the Required Consenting Lenders (in consultation with Birch Grove) under Article VIII.C of the Plan, each of the conditions precedent to the Effective Date, as set forth in Article VIII.B of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article VIII.C of the Plan.

**S.    Implementation**

70.    All documents and agreements necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  The Debtors have exercised reasonable business judgment in determining which agreements to enter into and have provided sufficient and adequate notice of such documents and agreements. The terms and conditions of such documents and agreements have been negotiated in good faith, at arm's length, are fair and reasonable, and are approved.   The Debtors and Reorganized Debtors, as applicable, are

authorized, without any further notice to or action, order, or approval of this Court, to finalize and execute and deliver all agreements, documents, instruments, and certificates relating thereto and perform their obligations thereunder in accordance with the Plan so long as such documents are consisted with the Plan.

## II.    ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

### A.    Findings and Conclusions

71.    The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

### B.    Confirmation

72.    All requirements for Confirmation of the Plan have been satisfied.  The Plan, a copy of which is attached hereto as **Exhibit A**, along with each of its provisions (whether or not specifically approved herein) and all operative exhibits and schedules thereto, is confirmed in each and every respect pursuant to section 1129 of the Bankruptcy Code.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to paragraph 112 hereof, the terms of the Plan, the Plan Supplement, and the exhibits and schedules thereto are incorporated by reference into this Confirmation Order, and the provisions of the Plan and this Confirmation Order are non-severable and mutually dependent.  The failure specifically to identify or refer to any particular provision of the Plan or any other agreement in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the

28

intent of this Court that the Plan and all other agreements approved by this Confirmation Order are approved in their entirety.

73.     Subject to the terms of the Plan (including Article XI.A thereof) and paragraph 8 hereof, the Debtors reserve the right to (a) alter, amend, update, or modify the Plan Supplement before the Effective Date in accordance with section 1127(b) of the Bankruptcy Code and (b) remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

74.     All objections and other responses to the Plan, other than those withdrawn with prejudice in their entirety before, or on the record at, the Confirmation Hearing, or preserved pursuant to paragraph 114 hereof, are either (a) resolved or sustained on the terms set forth herein or (b) overruled on the merits.

**C.      Binding Nature of Plan Terms**

75.     Notwithstanding any otherwise applicable law, from and after the entry of this Confirmation Order, the terms of the Plan and this Confirmation Order, including the compromises, releases, waivers, discharges, and injunctions described therein and herein, shall be deemed binding upon (a) the Debtors, (b) any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the holders of such Claims or Interests accepted, rejected, or are presumed to have accepted or deemed to have rejected the Plan), (c) any and all non-Debtor counterparties to Contracts, and (d) the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing, in each case subject to Article III.C of the Plan.

**D.      Plan Classification Controlling**

76.     The classification of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth

on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim as representing the actual classification of such Claim under the Plan for distribution or any other purpose (other than for evidencing the vote of such party on the Plan); and (d) shall not be binding on the Debtors, Reorganized Debtors, or Holders of Claims for purposes other than voting on the Plan.

### E.    Post-Confirmation Notices and Bar Dates

#### 1.    Notice of Entry of Confirmation Order and Effective Date

77.    In accordance with Bankruptcy Rules 2002 and 3020(c), within 10 days after the occurrence of the Effective Date, the Debtors shall file with this Court and serve notice of entry of this Confirmation Order and the Effective Date, substantially in the form attached hereto as **Exhibit B** (the "**Notice of Effective Date**") by United States mail, first-class postage prepaid, by hand, or by overnight courier service to all parties served with the Confirmation Hearing Notice; *provided*, that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity of that Entity's new address.  To supplement the notice described in the preceding sentence, within 20 days after the Effective Date, the Debtors shall submit for publication the Notice of Effective Date once in the national edition of the *Wall Street Journal*.  Mailing and publication of the Notice of Effective Date in the time and manner set forth in this paragraph shall be good and sufficient

notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no other or further notice is necessary.

2.     Administrative Claim Bar Date

78.     All requests for payment of an Administrative Claim (other than DIP Facility Claims, Cure Costs, Professional Fee Claims, or U.S. Trustee quarterly fees payable pursuant to Article II.D of the Plan) that accrued on or before the Effective Date other than in the ordinary course of business must be filed with this Court and served on the Debtors no later than the Administrative Claims Bar Date, which is the 30th day after the Effective Date.  If a Holder of an Administrative Claim (other than DIP Facility Claims, Cure Costs, Professional Fee Claims, or U.S. Trustee quarterly fees payable pursuant to Article II.D of the Plan) that is required to, but does not, file and serve a request for payment of such Administrative Claim by the Administrative Claims Bar Date, such Administrative Claim shall be considered Allowed only if the Holder of such Claim obtains a Final Order of this Court allowing such Claim.

3.     Professional Compensation

79.     The provisions governing professional compensation set forth in Article II.A.2 of the Plan are approved in their entirety.

4.     Rejection Damage Claim Bar Date

80.     Unless otherwise provided by an order of this Court, any Proofs of Claim asserting Claims arising from the rejection of Contracts by virtue of the Plan must be filed within 30 days after the Effective Date.  Any Proofs of Claim arising from the rejection of Contracts that are not timely filed shall be subject to disallowance by further order of this Court upon objection on such grounds.  All Allowed Claims arising from the rejection of Contracts shall constitute General Unsecured Claims and shall be treated in accordance with Article III.B of the Plan.

5.      Service of Documents

81.    After the Effective Date, the Reorganized Debtors have authority to send a notice

to Entities that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must

file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective

Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents

pursuant to a pre-Effective Date request under Bankruptcy Rule 2002 to those Entities who have

filed renewed requests pursuant to Bankruptcy Rule 2002; *provided* that the Reorganized Debtors

shall also provide notice of any post-Effective Date matters to any Entity that has a direct pecuniary

interest in the relief sought by the pleading.

F.      **General Settlement of Claims and Interests**

82.    In consideration for the classification, distributions, releases, and other benefits

provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-

faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies

resolved pursuant to the Plan.  The entry of this Confirmation Order shall constitute this Court's

approval of the compromise or settlement of all such Claims, Interests, Causes of Action, and

controversies, as well as a finding by this Court that such compromise or settlement is in the best

interests of the Debtors, the Estates, and Holders of Claims and Interests and is fair, equitable, and

is within the range of reasonableness.  Distributions made to Holders of Allowed Claims are

intended to be, and shall be, indefeasible.

G.      **Corporate Existence; Vesting of Assets in Reorganized Debtors**

83.    Except as otherwise provided in the Plan, each Debtor shall continue to exist after

the Effective Date as a separate corporate Entity, limited liability company, partnership, or other

form, as the case may be, with all the powers of a corporation, limited liability company,

partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in

30396739.1

US-DOCS\141042994.12

which each Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan, by the Debtors, or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.

84.     Except as otherwise provided in the Plan (including in Article IX.B thereof) or any agreement, instrument, or other document incorporated therein, including the Restructuring Memorandum and agreements with respect to the Exit Facility, on the Effective Date, all property of each Estate and all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by this Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, including, for the avoidance of doubt, any restrictions on the use, acquisition, sale, lease, or disposal of property under section 363 of the Bankruptcy Code.

### H.     Cancellation of Agreements and Interests

85.     Except as otherwise provided for in the Plan, on the later of the Effective Date and the date on which the relevant distributions are made pursuant to Article VI of the Plan:  (a) (i) the obligations of the Debtors under the DIP Credit Agreement, the Prepetition Credit Agreement, and any other note, bond, indenture, or other instrument or document directly or indirectly evidencing or creating any indebtedness of the Debtors; and (ii) any certificate, equity security, share, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating

30396739.1

US-DOCS\141042994.12

an ownership interest in the Debtors (except, in each case, such certificates, notes or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan), shall be cancelled solely as to the Debtors and their Affiliates, and the Reorganized Debtors and their Affiliates shall not have any continuing obligations thereunder; and (b) the obligations of the Debtors and their Affiliates pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated or entered into pursuant to the Plan) shall be released and discharged; except that:  (x) the DIP Facility shall continue in effect solely for the purpose of:  (i) allowing the DIP Agent to receive distributions from the Debtors under the Plan and to make further distributions to the Holders of the DIP Facility Claims on account of such Claims, as set forth in Article VI of the Plan; (ii) the conversion of the outstanding DIP Loans (on a cashless dollar-for-dollar basis) to Roll-Up Loans; (iii) preserving the DIP Agent's and the DIP Lenders' right to all amounts due under the DIP Credit Agreement and DIP Orders; and (iv) preserving the DIP Agent's and the DIP Lenders' right to indemnification from the Debtors pursuant and subject to the terms of the DIP Facility; and (y) the Prepetition Credit Agreement shall continue in effect solely for the purpose of:  (i) allowing the Prepetition Agent to receive distributions from the Debtors under the Plan and to make further distributions to the Holders of the Prepetition Term Loan Claims on account of such Claims, as set forth in Article VI of the Plan; (ii) preserving the Prepetition Agent's and the Prepetition Lenders' right to all amounts due under

the Prepetition Credit Agreement; and (iii) preserving the Prepetition Agent's and the Prepetition Lenders' right to indemnification from the Debtors pursuant and subject to the terms of the Prepetition Credit Agreement.

## I. Exit Facility

86.     Entry of this Confirmation Order shall be deemed to constitute approval by this Court of the Exit Facility and related agreements (including all transactions contemplated thereby, such as any supplementation or additional syndication of the Exit Facility, and all actions to be taken, undertakings to be made and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities and expenses provided for therein) and, subject to the occurrence of the Effective Date, authorization for the applicable Reorganized Debtors to enter into and perform their obligations in connection with the Exit Facility.

87.     On the Effective Date, the agreements with respect to the Exit Facility shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms.  The financial accommodations to be extended pursuant to the Exit Facility are being extended, and are deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.  On the Effective Date, all of the Liens and security interests to be granted in connection with the Exit Facility (a) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted in accordance with the Exit Facility, (b) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted in connection with the Exit Facility,

30396739.1

US-DOCS\141042994.12

and (c) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized Debtors and the Entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

J.    **Exemption from Registration Requirements**

88.    The offering, issuance, and distribution of any Securities, including the New Common Equity, Exit Facility Equity, and Reorganized Starry Holdings Equity in exchange for Claims pursuant to Article III of the Plan, shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act pursuant to section 1145 of the Bankruptcy Code.  Except as otherwise provided in the Plan or the governing certificates or instruments, any and all such New Common Equity and Exit Facility Equity so issued under the Plan will be freely tradable under the Securities Act by the recipients thereof, subject to:  (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in Section 2(a)(11) of the Securities Act, and compliance with any applicable state or foreign securities laws, if any, and any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such Securities or instruments; (b) the restrictions, if any, on the

transferability of such Securities and instruments; and (c) any other applicable regulatory approval. Notwithstanding anything to the contrary in the Plan, no Entity shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the New Common Equity or Exit Facility Equity is exempt from registration.

**K.      Exemption from Certain Transfer Taxes and Recording Fees**

89.      To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any Entity pursuant to or in connection with the Plan, including:  (a) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtors or the Reorganized Debtors;  (b) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any United States federal, state, or local document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate United States state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

L.        **Preservation of Causes of Action**

90.      In accordance with section 1123(b) of the Bankruptcy Code, but subject to the

releases set forth in Article IV.R and IX of the Plan, all Causes of Action that a Debtor may hold

against any Entity shall vest in the applicable Reorganized Debtor on the Effective Date.

Thereafter, the Reorganized Debtors shall have the exclusive right, authority, and discretion to

determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw,

or litigate to judgment any such Causes of Action (except for the Released Avoidance Actions,

which shall be released on the Effective Date), whether arising before or after the Petition Date,

and to decline to do any of the foregoing without the consent or approval of any third party or

further notice to or action, order, or approval of this Court.  No Entity may rely on the absence of

a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any specific

Cause of Action as any indication that the Debtors or Reorganized Debtors will not pursue any

and all available Causes of Action.  The Debtors and Reorganized Debtors expressly reserve all

rights to prosecute any and all Causes of Action (except for the Released Avoidance Actions,

which shall be released on the Effective Date) against any Entity, except as otherwise expressly

provided in the Plan, and, therefore, no preclusion doctrine, including the doctrines of res judicata,

collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise),

or laches, shall apply to any Cause of Action upon, after, or as a consequence of Confirmation or

the occurrence of the Effective Date.

91.      Notwithstanding any provision in the Plan or any order entered in the Chapter 11

Cases, the Debtors and Reorganized Debtors forever waive, relinquish, and release any and all

Causes of Action the Debtors and the Estates had, have, or may have against any Released Party

to the fullest extent set forth in Article IX of the Plan.

### M.    Corporate Action

92.    Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized, approved, and, to the extent taken before the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, or officers of the Debtors, the Reorganized Debtors, or any other Entity, including, as applicable:  (a) rejection or assumption, as applicable, of Contracts; (b) selection of the directors, managers, and officers for the Reorganized Debtors; (c) the execution of any agreements with respect to the Exit Facility, and the filing or adoption of the New Organizational Documents; (d) the issuance and distribution of the Reorganized Starry Holdings Equity, New Common Equity, and Exit Facility Equity; and (e) all other acts or actions contemplated, or reasonably necessary or appropriate to promptly consummate the transactions contemplated by the Plan, including, without limitation, those described in the Restructuring Memorandum (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan involving the company structure of the Debtors, and any company action required by the Debtors in connection therewith, shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, authorized persons, or officers of the Debtors.

93.    On or before the Effective Date, the appropriate officers, directors, managers, or authorized persons of the Debtors (including any president, vice-president, chief executive officer, treasurer, general counsel, or chief financial officer thereof) shall be authorized to issue, execute, and deliver the agreements, documents, securities, certificates of incorporation, certificates of formation, bylaws, operating agreements, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the applicable Debtors or applicable Reorganized Debtors, including (a) any agreements or instruments with respect to the Exit Facility and the New Organizational Documents and (b) any

30396739.1

and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by Article IV.S of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

### N.   Assumed Contracts; Cure Costs; Adequate Assurance; Contract Objections

94.   The provisions governing the treatment of Contracts set forth in Article V of the Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption or rejection, as applicable, of such Contracts) shall be, and hereby are, approved in their entirety. Except as otherwise agreed by the Debtors and the applicable counterparty or counterparties, or as determined by order of this Court, the Cure Cost under each Contract shall be as set forth in the Contract Notice.

95.   Entry of this Confirmation Order by this Court shall constitute an order approving the assumptions or rejections of the Debtors' Contracts pursuant to sections 365(a) and 1123 of the Bankruptcy Code and effective on the occurrence of the Effective Date or, as to rejected Contracts, on such earlier date as may be identified on the Rejected Contracts List or other motion or notice to reject. Each Contract assumed pursuant to the Plan or by order of this Court, and not assigned to a third party on or before the Effective Date, shall re-vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as such terms may have been modified by order of this Court or agreement of the parties. To the maximum extent permitted by law, to the extent any provision in any Contract assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Contract or the execution of any other Restructuring (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Contract or to exercise any other default-related rights with respect thereto. For the avoidance of doubt, consummation

30396739.1

of the Restructuring shall not be deemed an assignment of any Contract of the Debtors, notwithstanding any change in name, organizational form, or jurisdiction of organization of any Debtor in connection with the occurrence of the Effective Date.

96.     Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Cost in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitation described below, or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree.

97.     Assumption of any Contract pursuant to the Plan or otherwise shall result in the full satisfaction and cure of any Claims and defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, under any assumed Contract arising at any time prior to the effective date of assumption.  Any counterparty to a Contract that fails to object timely to the proposed assumption, assumption and assignment, or Cure Cost in accordance with the Contract Noticing Procedures will be deemed to have assented to such assumption, assumption and assignment, and Cure Cost.

### O.     Provisions Governing Distributions

98.     The distribution provisions of Article VI of the Plan shall be, and hereby are, approved in their entirety.  Unless otherwise provided in Article VI of the Plan, the Distribution Agent shall make all plan distributions to the appropriate Holders of Allowed Claims in accordance with the terms of the Plan.  Distributions on account of Allowed DIP Facility Claims and Allowed Prepetition Term Loan Claims shall be made to the DIP Agent and the Prepetition Agent, respectively, and such agents will be, and shall act as, the Distribution Agent or shall direct such distribution with respect to its respective Class of Claims in accordance with the terms and

30396739.1

US-DOCS\141042994.12

conditions of the Plan, the DIP Facility, and the Prepetition Credit Agreement, as applicable.  The

Debtors or Reorganized Debtors may employ or contract with other Entities to assist in or make

the distributions required by the Plan and may pay reasonable fees and expenses of such Entities

and the Distribution Agent(s) in the ordinary course of business.  No Distribution Agent shall be

required to give any bond or surety or other security for the performance of its duties unless

otherwise ordered by this Court.

### P.    Procedures for Resolving Claims and Disputes

99.    The procedures for resolving Disputed, contingent, and unliquidated Claims

contained in Article VII of the Plan shall be, and hereby are, approved in their entirety.

### Q.    Authorization to Consummate

100.    The Debtors are authorized to consummate the Plan at any time after the entry of

this Confirmation Order subject to the satisfaction or waiver (with the consent of the applicable

parties and in accordance with Article VIII.C of the Plan) of the conditions precedent to the

Effective Date set forth in Article VIII.B of the Plan.

### R.    Effect of Non-Occurrence of Conditions to Effective Date

101.    If the Effective Date does not occur on or before the termination of the

Restructuring Support Agreement, then:  (a) the Plan shall be null and void in all respects; (b) any

settlement or compromise embodied in the Plan, assumption or rejection of Contracts effected

under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed

null and void; and (c) nothing contained in the Plan, this Confirmation Order, or the Disclosure

Statement shall:  (x) constitute a waiver or release of any Claims, Interests, or Causes of Action;

(y) prejudice in any manner the rights of the Debtors or any other Entity; or (z) constitute an

admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

**S.      Discharge, Release, Injunction, and Related Provisions**

      1.      <u>Discharge of Claims and Termination of Equity Interests; Compromise and Settlement of Claims, Equity Interests, and Controversies</u>

102.     The provisions of <u>Article IX.A</u> of the Plan are hereby approved in their entirety. This Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan.    The entry of this Confirmation Order shall constitute this Court's approval of the compromise, resolution, or settlement of all such Claims, Interests, and controversies, as well as a finding by this Court that such compromise or settlement is in the best interests of the Debtors, the Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.

      2.      <u>Debtor Release</u>

103.     The Debtor Release, as set forth in <u>Article IX.</u>B of the Plan, and each of the related provisions and definitions contained therein, is approved.  **Pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in the Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties from any and all claims, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract,**

violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the Restructuring Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, any Sale Transaction Documentation, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) this Confirmation or consummation of the Plan or the solicitation of votes on the Plan that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; provided, however, that the foregoing provisions of the Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or

**gross negligence of such applicable Released Party as determined by Final Order of this Court or any other court of competent jurisdiction; and/or (ii) the rights of such Debtor Releasing Party to enforce the Plan, any Sale Transaction Documentation and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan or any Sale Transaction or assumed pursuant to the Plan or any Sale Transaction or assumed pursuant to Final Order of this Court.  The foregoing release shall be effective as of the Effective Date without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and this Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release.  Notwithstanding the foregoing, nothing in provision <u>Article IX.B</u> of the Plan shall or shall be deemed to (i) prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors and/or (ii) operate as a release or waiver of any Intercompany Claims, in each case unless otherwise expressly provided for in the Plan.**

3.    <u>Third-Party Release</u>

104.    The Third-Party Release, as set forth in <u>Article IX.C</u> of the Plan, and each of the related provisions and definitions contained therein, is approved.  **Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent**

45

permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "Third-Party Release") from any and all claims, interests, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the Restructuring Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity

Interest that is treated in the Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, any Sale Transaction Documentation, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) this Confirmation or consummation of the Plan or the solicitation of votes on the Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, however, that the foregoing provisions of this Third-Party Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of this Court or any other court of competent jurisdiction; and/or (ii) the rights of such Non-Debtor Releasing Party to enforce the Plan, any Sale Transaction Documentation and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan or any Sale Transaction or assumed pursuant to the Plan or any Sale Transaction or Final Order of this Court. The foregoing release shall be effective as of the Effective Date, without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and this Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any

**claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release.**

105.    Notwithstanding anything to the contrary in the Plan, on the Effective Date, Linda Nguyen ("**Nguyen**") is deemed not to have released any claims Nguyen may have which are the subject of Article IX.C of the Plan.

4.    Exculpation

106.    The Exculpation, as set forth in Article IX.D of the Plan, and each of the related provisions and definitions contained therein, is approved.  **Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to, the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation and consummation of the Plan, making Distributions, the Disclosure Statement, the Sale Process, the Sale Order, or the solicitation of votes for, or Confirmation of, the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; the issuance of securities under or in connection with the Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions or documentation in furtherance of any of the foregoing, including but not limited to the Restructuring Support Agreement; or any other postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of the Plan; provided, however, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable**

**Exculpated Party as determined by Final Order of this Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of this Court; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions. The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person. Notwithstanding the foregoing, nothing in <u>Article IX.D</u> of the Plan shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors, in each case unless otherwise expressly provided for in the Plan. The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

> 5.    <u>Injunction</u>

107.    The injunction set forth in Article <u>IX.E</u> of the Plan, and each of the related provisions and definitions contained therein, is approved. **Except as otherwise provided in the Plan or this Confirmation Order (and, for the avoidance of doubt, subject to <u>Article III.C</u> of the Plan), all entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that: (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) have been released pursuant to <u>Article IX.B</u> of the Plan; (c) have been released**

49

**pursuant to <u>Article IX.C</u> of the Plan, (d) are subject to exculpation pursuant to <u>Article IX.D</u> of the Plan (but only to the extent of the exculpation provided in <u>Article IX.D</u> of the Plan), or (e) are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding on account of any such claims, interests, Causes of Action, or liabilities that have been compromised, released, exculpated, or settled, as applicable, against the Debtors, the Reorganized Debtors, or any Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) pursuant to the terms of the Plan.**

> **T.    Retention of Jurisdiction**

108.    Notwithstanding entry of this Confirmation Order and the occurrence of the Effective Date, this Court shall, after the Effective Date, retain jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, and the Plan to the fullest extent permitted by law, including, without limitation, jurisdiction over those matters set forth in <u>Article X</u> of the Plan.

> **U.    Reservation of Rights**

109.    None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests before the Effective Date.

> **V.    Term of Injunctions or Stays**

110.    Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of this Court, and extant on the date hereof (excluding any injunctions or stays

30396739.1

US-DOCS\141042994.12

contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

### W.  Nonseverability of Plan Provisions Upon Confirmation

111.    This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (c) nonseverable and mutually dependent.

### X.  Conflicts

112.    To the extent that any provision of the Disclosure Statement, or any order entered before Confirmation (for the avoidance of doubt, not including this Confirmation Order) referenced in the Plan (or any exhibits, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control. To the extent that any provision of the Plan conflicts with or is in any way inconsistent with any provision of this Confirmation Order, this Confirmation Order shall govern and control.

### Y.  Dissolution of Committee

113.    On and as of the Effective Date, the Committee shall dissolve, and the current and former members of the Committee shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases on the Effective Date; provided that the Committee and its professionals shall have the right to file, prosecute, review, and object to any applications for compensation and reimbursement of expenses filed in accordance with Article II.A.2 of the Plan.

30396739.1

US-DOCS\141042994.12

### Z.    Outstanding Objections

114.    Notwithstanding any provision in the Plan or this Confirmation Order, all objections and comments raised in connection with Confirmation, including in respect of Contracts and Cure Costs, including but not limited to the amount of the Cure Cost to be Allowed for each Contract, set forth on **Exhibit A** to the Confirmation Brief, to the extent not already resolved as of the date hereof, are fully preserved with all rights reserved and shall be scheduled, to the extent necessary, for a future hearing before this Court with briefing to be agreed to by the parties.  All Claims, objections, defenses, positions, and arguments are reserved with respect to such future hearings and proceedings relating to such Contracts and Cure Costs.

### AA.    American Towers LLC ("**ATC**")

115.    Notwithstanding any other provision in the Plan or this Confirmation Order, nothing shall enjoin, affect, modify, limit, or impact ATC's rights, if any (as available under section 553 of the Bankruptcy Code and applicable law) of setoff and recoupment, and such rights shall be preserved and are unaffected by Confirmation.

### BB.    Federal and State Interests

116.    Notwithstanding any provision in the Plan, this Confirmation Order, any Plan Supplement, Definitive Documents, or any implementing Plan documents (collectively, "**Documents**"):  as to the United States, nothing in the Documents shall:  (a) discharge, release, enjoin, impair or otherwise preclude (i) any liability to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code, (ii) any claim of the United States arising after the Effective Date, or (iii) any liability of any entity or person under police or  regulatory statutes or regulations to any Governmental Unit (as defined by section 101(27) of the Bankruptcy Code) as the owner, lessor, lessee, or operator of property or rights to property that such entity

owns, operates, or leases after the Effective Date; (b) release, nullify, preclude, or enjoin the enforcement of any police or regulatory power; (c) authorize the assumption, sale, assignment, or other transfer of any federal (i) grants, (ii) grant funds, (iii) contracts, (iv) property, including but not limited to, intellectual property and patents, (v) leases, (vi) agreements, (vii) licenses, including but not limited to, FCC licenses, or (viii) other interests of the federal government (collectively, "**Federal Interests**") without compliance by the Debtors, Reorganized Debtors, and the Successful Bidder (as may be applicable) with all terms of the Federal Interests and with all applicable non-bankruptcy law; (d) be interpreted to set cure amounts as to, or to require the United States to novate, approve, or otherwise consent to the assumption, transfer, or assignment of, any Federal Interests; (e) authorize the assumption, transfer, or assignment of any governmental (i) license, including but not limited to, FCC licenses, (ii) permit, (iii) registration, (iv) authorization or (v) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements, obligations, and approvals under non-bankruptcy laws; (f) confer exclusive jurisdiction to the Bankruptcy Court with respect to the Federal Interests, claims, liabilities, and Causes of Action, except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code); (g) waive, alter, or otherwise limit the United States' property rights with respect to the Federal Interests, including but not limited to, inventory, patents, intellectual property, licenses, and data; (h) release, exculpate, enjoin, impair, or discharge any non-Debtor from any claim, suit, right, or Cause of Action of, or liability to the United States; (i) enjoin or affect any Governmental Unit's setoff rights under federal law as recognized in section 553 of the Bankruptcy Code, and recoupment rights, and such rights shall be preserved and are unaffected; (j) require the United States to file an administrative claim in order to receive payment for any liability described in Section 503(b)(1)(B) and (C) pursuant to Section 503(b)(1)(D) of the

Bankruptcy Code; (k) constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy law; (l) be construed as a compromise or settlement of any liability, claim, Cause of Action, or interest of the United States; (m) modify the scope of Section 502 of the Bankruptcy Code with respect to the claims of the United States; (n) cause the Governmental Bar Date (as defined in the order approving the Bar Dates [Docket No. 128]) to be shortened or cause the filing of any claim or amendment to a timely filed claim by the United States on or after the Effective Date, including, but not limited to any claim filed by the United States after the Effective Date but before the Governmental Bar Date, to be automatically disallowed and expunged; (o) be deemed to alter the date of any Plan distribution to the United States from what is contained in Article II.C, Article V.B, Article V.C, and Article VI, as applicable; (p) require rejection damage claims relating to Federal Interests, if any (i) to be filed by a deadline other than the later of (x) the Governmental Bar Date or (y) thirty (30) days after the effective date of the rejection of such Federal Interest, or (ii) alter the treatment of such rejection claims under the Bankruptcy Code; (q) make prospective determinations as to the pre-petition nature of any Federal Interest; (r) enjoin or estop the United States from asserting against the Debtors claims, liabilities, and obligations assumed by the Successful Bidder (if any) that the United States would otherwise be entitled to assert against the Debtors and the Debtors' estates under applicable law; or (s) affect or impair the ability of the United States to make demand on, be paid by, or otherwise pursue or collect from any sureties that are liable for any debt owed to the United States.

117.   Liens securing Allowed claims of the United States, if any, shall be retained until the claim, with any applicable interest, is paid in full.  Administrative Claims of the United States Allowed pursuant to the Plan or the Bankruptcy Code, if any, shall accrue interest and penalties as

provided by applicable non-bankruptcy law until paid in full.  Priority Tax Claims of the United States Allowed pursuant to the Plan or the Bankruptcy Code will be paid in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code.  To the extent allowed Priority Tax Claims (including any penalties, interest, or additions to tax entitled to priority under the Bankruptcy Code) are not paid in full in cash on the Effective Date, then such Priority Tax Claims shall accrue interest commencing on the Effective Date at the rate set forth in Section 511 of the Bankruptcy Code.

118.    No provision in the Plan or this Confirmation Order relieves the Debtors or the Reorganized Debtors from any obligation to comply with the Communications Act of 1934, as amended, and the rules, regulations and orders promulgated under such statutes by the FCC.  No transfer of any FCC license or authorization held by the Debtors or transfer of control of an FCC licensee controlled by the Debtors shall take place before the issuance of FCC regulatory approval for such transfer pursuant to applicable FCC regulations.  The FCC's rights and powers to take any action pursuant to its regulatory authority including, but not limited to, imposing any regulatory conditions on any of the above-described transfers, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority.  For the avoidance of doubt, nothing in this paragraph prevents the discharge, in whole or in part, of any claim of the FCC that is otherwise found to be dischargeable under the Bankruptcy Code.

**CC.    Securities Exchange Commission**

119.    Notwithstanding any language to the contrary in the Disclosure Statement, the Plan, and/or this Confirmation Order, no provision herein shall (a) preclude the Securities Exchange Commission (the "**SEC**") from enforcing its police or regulatory powers or (b) enjoin, limit, impair, or delay the SEC from commencing or continuing any claims, causes of action, proceeding or investigations against any non-Debtor person or non-Debtor entity in any forum.

30396739.1
US-DOCS\141042994.12

**DD.    Substantial Consummation**

120.    Substantial consummation of the Plan under sections 1101(2) and 1127(b) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

**EE.    Closing of Chapter 11 Cases**

121.    The Reorganized Debtors may seek authority from this Court to close any remaining Chapter 11 Cases of any of the Debtors in accordance with the Plan, the Bankruptcy Code, and the Bankruptcy Rules.

122.    On or after the Effective Date, the Reorganized Debtors may file one motion seeking authority to close the Chapter 11 Cases of all of the Debtors except for Debtor Starry Holdings and to change the caption of the Chapter 11 Cases accordingly.  Nothing in the Plan shall authorize the closing of any Chapter 11 Case retroactive to a date that precedes the date any such order is entered.  Any request for retroactive relief shall be made on motion served on the U.S. Trustee.  Upon the Filing of a motion to close the Chapter 11 Case of Starry Holdings, the Reorganized Debtors shall file a final report with respect to all of the Chapter 11 Cases pursuant to Local Bankruptcy Rule 3022-1(c).

**FF.    Final Order**

123.    This Confirmation Order is a Final Order, and the period in which an appeal or any motion seeking to stay or alter the effectiveness hereof must be filed shall commence upon entry hereof.

**<u>EXHIBIT A</u>**

**Plan**

30396739.1

US-DOCS\141042994.12

**EXHIBIT B**

**Notice of Effective Date**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------x
                                                       :
In re:                                                 :    Chapter 11
                                                       :
STARRY GROUP HOLDINGS, INC., et al.,¹                  :    Case No. 23-10219 (KBO)
                                                       :
                    Debtors.                           :    (Jointly Administered)
                                                       :
-------------------------------------------------------x
```

## NOTICE OF (A) ENTRY OF ORDER CONFIRMING AND
## (B) EFFECTIVE DATE OF THIRD AMENDED JOINT CHAPTER 11
## PLAN OF REORGANIZATION OF STARRY GROUP HOLDINGS, INC. AND
## ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      **Confirmation of the Plan.**  On May [ ● ], 2023, the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") entered an order [Docket No. [ ● ]] (the "**Confirmation Order**") confirming the *Third Amended Joint Chapter 11 Plan of Reorganization of Starry Group Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 407] (as modified or amended, the "**Plan**"), in the Chapter 11 Cases of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**").  Unless otherwise defined in this Notice, capitalized terms and phrases used herein have the meanings given to them in the Plan and the Confirmation Order.  This Notice is intended to provide notice of the entry of the Confirmation Order and the occurrence of the Effective Date of the Plan and it does not, and shall not be construed to, limit, modify or interpret any of the provisions of the Confirmation Order.  The following paragraphs identify some of the provisions of the Plan and Confirmation Order for the convenience of creditors; *however*, creditors should refer to the full text of the Plan and Confirmation Order and should not rely upon the summary provided below.

2.      **Effective Date of the Plan.**  On [ ● ], 2023, the Effective Date of the Plan occurred.  All conditions precedent to the Effective Date enumerated in Article VIII of the Plan were satisfied or waived in accordance with the Plan as of [ ● ], 2023.  Pursuant to the Confirmation Order and the Plan, the releases, exculpation, and injunction provisions set forth in Article IX of the Plan are now in full force and effect.

---

¹    The debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are: Starry Group Holdings, Inc. (9355); Starry, Inc. (9616); Connect Everyone LLC (5896); Starry Installation Corp. (7000); Starry (MA), Inc. (2010); Starry Spectrum LLC (N/A); Testco LLC (5226); Starry Spectrum Holdings LLC (9444); Widmo Holdings LLC (9208); Vibrant Composites Inc. (8431); Starry Foreign Holdings Inc. (3025); and Starry PR Inc. (1214).  The debtors' address is 38 Chauncy Street, Suite 200, Boston, Massachusetts 02111.

3.      **Bar Dates**.

a.      *Fee Claims*.  All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred on and after the Petition Date and prior to and on the Effective Date must be Filed no later than 45 days after the Effective Date. Objections to any final requests for payment of Professional Fee Claims must be filed no later than 21 days from the date of the filing of such final requests for payment of Professional Fee Claims. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders.  The Reorganized Debtors shall pay Professional Fee Claims in Cash to such Retained Professionals in the amount the Bankruptcy Court Allows from funds held in the Professional Fee Escrow Account, as soon as reasonably practicable after such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court; *provided* that the Debtors' and the Reorganized Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited or deemed limited to funds held in the Professional Fee Escrow Account.  To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the Allowed amount of Professional Fee Claims owing to the Retained Professionals, the Reorganized Debtors shall pay such amounts within 10 Business Days after entry of the order approving such Professional Fee Claims.  Notwithstanding anything in the Plan to the contrary, payments on account of Allowed Professional Fee Claims of, and any post-Effective Date fees and expenses incurred by, Committee Professionals shall not exceed $2,250,000 in the aggregate (the "**Committee Professional Fee Cap**").  For the avoidance of doubt, no claims of Committee Professionals in excess of the Committee Professional Fee Cap will be Allowed, and all such claims to the extent in excess of the Committee Professional Fee Cap shall be discharged and released in accordance with the provisions of Article IX of the Plan.

b.      *Administrative Claims*.  All requests for payment of an Administrative Claim (other than DIP Facility Claims, Cure Costs, Professional Fee Claims, or U.S. Trustee quarterly fees payable pursuant to Article II.D of the Plan) that accrued on or before the Effective Date other than in the ordinary course of business must be filed with the Bankruptcy Court and served on the Debtors no later than the date that is the 30 days after the Effective Date (the "**Administrative Claims Bar Date**").  If a Holder of an Administrative Claim (other than DIP Facility Claims, Cure Costs, Professional Fee Claims, or U.S. Trustee quarterly fees payable pursuant to Article II.D of the Plan) that is required to, but does not, file and serve a request for payment of such Administrative Claim by the Administrative Claims Bar Date, such Administrative Claim shall be considered Allowed only if the Holder of such Claim obtains a Final Order of the Bankruptcy Court allowing such Claim.

c.      *Rejection Damages Claims*.  Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim asserting Claims arising from the rejection of Executory Contracts and Unexpired Leases by virtue of the Plan must be filed within 30 days after the Effective Date.  Any Proofs of Claim arising from the rejection of Executory Contracts and Unexpired Leases that are not timely filed shall be subject to disallowance by further order of the Bankruptcy Court upon objection on such grounds.  All Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases shall constitute General Unsecured Claims and shall be treated in accordance with Article III.B of the Plan.

4.       **Bankruptcy Court Address**.   For purposes of Filing requests for payment of Administrative Claims and applications for allowance of Professional Fee Claims, the address of the Bankruptcy Court is 824 North Market Street, 5th Floor, Wilmington, Delaware 19801.

5.       **Notices**.  To continue to receive pleadings and other documents filed in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002, you must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.   Commencing [ ● ], 2023, (*i.e.*, 30 calendar days after the Effective Date), the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 will be limited to those Entities who have filed such renewed requests (including any Entities that file such renewed requests after such date); *provided* that Entities will continue to receive notice of matters directly affecting their pecuniary interests.

6.       **Copies of Confirmation Order**.  Copies of the Confirmation Order, the Plan, and any pleadings filed in the Chapter 11 Cases may be obtained by (a) visiting the Debtors' restructuring website at http://www.kccllc.net/Starry; (b) sending an email inquiry at http://www.kccllc.net/Starry/inquiry; and/or (c) calling the Debtors' restructuring hotline at +1.866.480.0830 (or +1.781.575.2040 for international calls).  The Confirmation Order and the Plan may also be examined by any party in interest during normal business hours at the Office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court, 824 Market Street, 5th Floor, Wilmington, Delaware 19801.  You may also obtain copies of the Confirmation Order or of any pleadings filed in the Chapter 11 Cases for a fee at http://www.deb.uscourts.gov.

*[Remainder of page left intentionally blank]*

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

/s/ _____.
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Joseph M. Mulvihill (No. 6061)
Timothy R. Powell (No. 6894)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  mnestor@ycst.com
            kcoyle@ycst.com
            jmulvihill@ycst.com
            tpowell@ycst.com

**LATHAM & WATKINS LLP**

Jeffrey E. Bjork (admitted *pro hac vice*)
Ted A. Dillman (admitted *pro hac vice*)
Jeffrey T. Mispagel (admitted *pro hac vice*)
Nicholas J. Messana (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
Email:  jeff.bjork@lw.com
            ted.dillman@lw.com
            jeffrey.mispagel@lw.com
            nicholas.messana@lw.com

- and -

Jason B. Gott (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
Email:  jason.gott@lw.com

*Counsel for Debtors and Debtors in Possession*

30396739.1

US-DOCS\141042994.12